**UNITED STATES DEPARTMENT OF LABOR, Plaintiff-Appellant,**

v.

**KAST METALS CORPORATION, Defendant-Appellee.**

No. 83–4311.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1984.

Francis X. Lilly, Deputy Sol. of Labor, Frank A. White, Assoc. Sol., Dennis K. Kade, Domenique Kirchner, Atty., U.S.

Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Jones, Day, Reavis & Pogue, John E. McFall, Marc W. Barta, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, RUBIN and REAVLEY, Circuit Judges.

GOLDBERG, Circuit Judge:

We are faced with the question whether the Occupational Safety and Health Administration ("OSHA") validly concocted a calculus to target employers for inspection without first providing the notice and comment rulemaking prescribed by the Administrative Procedure Act ("APA" or "Act"), 5 U.S.C. § 553 (1982). Because we conclude that the Secretary of Labor promulgated a procedural rule that does not generate a substantial impact on the rights or interests of regulated parties, we hold that the Secretary's action did not run afoul of § 553 and reverse the judgment of the district court below.

## FACTS

On December 1, 1982, defendant-appellant United States Department of Labor applied for and obtained a search warrant authorizing a programmed safety and health inspection of a steel castings manufacturing facility in Shreveport, Louisiana. That plant is owned and operated by plaintiff-appellee Kast Metals Corporation ("Kast"), which employs some 1000–2500 workers. The warrant application stated that Kast had been selected for inspection pursuant to a revised administrative plan, OSHA Instruction CPL 2.25B. A federal magistrate found probable cause and issued the warrant, but the company refused to honor its terms. When OSHA agents attempted to conduct the inspection on December 1–3, 1981, Kast allowed access only to the company's records and denied entry to conduct a physical examination of the workplace.

At the time of the OSHA-Kast conflict, CPL 2.25B set forth the criteria and method by which OSHA selected employers for routine safety and health inspections. The plan's stated objective was to concentrate inspection resources "in industries with the highest lost workday injury rates (safety) and with the greatest potential for health problems." CPL 2.25B(E)(4)(c), at 3. This method changed a previous policy of "wide dispersion of inspection activity," *id.*, in an attempt both to reduce the subjectivity of OSHA's selection process and to allocate agency inspection resources more efficiently. After feeding the relevant data into its recipe,[1] OSHA found appellee to be first on

---

1. CPL 2.25B targeted companies for health inspections in accord with a Health Inspection Plan, which was developed by a panel of experts from OSHA and the National Institute of Occupational Safety and Health ("NIOSH").

These experts reviewed the toxicological literature on hazardous substances, assigning each substance a hazard "weight" based on the possible health effects of the substance. They then ranked particular industries by giving the most weight to those having the greatest number of substances determined to be the most hazardous and a relatively high number of employees potentially exposed. Potential exposure was determined on the basis of NIOSH's National Occupation Hazard Survey, which indicated the number of employees exposed to a substance full-time in a particular industry, the number exposed part-time, and the number employed in the industry.

OSHA then developed an Industry Ranking List, which ranked industries found in each state by Standard Industrial Classification ("SIC") Code based upon each industry's potential employee exposure to hazardous substances. OSHA also developed an Establishment List for each state, which listed establishments for each SIC on the statewide Industry Ranking List.

OSHA Area Directors used these materials to develop Inspection Registers, or listings of establishments on the Establishment List, which would be scheduled for inspection in a fiscal year. To do so, the Area Director first determined how many inspections could be conducted in a fiscal year. He then doubled the number of projected inspections, and the resulting number was the number of establishments selected in consecutive order from the Establishment List to form the Inspection Register. The Inspection Register was divided into two cycles, each consisting of one-half of the total number

the list of employers requiring health inspections but not within the group of companies to be scheduled for a safety check.

On December 8, Kast moved in federal district court to quash the warrant, contending that OSHA had promulgated CPL 2.25B without satisfying the notice and comment rulemaking procedures required by the APA, 5 U.S.C. § 553. The Secretary answered Kast's motion and counterclaimed for an adjudication holding Kast in contempt for having failed to comply with the warrant. In response to Kast's contention that notice and an opportunity for comment should have been provided, the Secretary maintained that CPL 2.25B was within the exemption for "rules of agency organization, procedure, or practice" contained in section 553(b)(A), and that the action did not have a substantial impact on the rights or interests of Kast. In turn, Kast retorted that CPL 2.25B fell outside the exemption because the inspection plan constituted a legislative rule and because, even if not legislative by the terms of section 551(4), the OSHA scheme was a procedural rule that had substantial impact on employers because it affected the likelihood of their being inspected.

The district court concluded that CPL 2.25B had been promulgated in violation of the notice and comment requirements embodied in section 553. Citing this court's decisions in *Brown Express, Inc. v. United States*, 607 F.2d 695, 701–02 (5th Cir.1979), and *Donovan v. Huffines Steel Co.*, 645 F.2d 288 (5th Cir.1981), *aff'g mem.* 488 F.Supp. 995 (N.D.Tex.1979), the judge below held that the exemption from notice and comment requirements for procedural rules did not extend to CPL 2.25B because it departed from existing practice and had a substantial impact on those regulated. In essence, the ruling found substantial impact in the fact that CPL 2.25B determined whether and at what time an employer would be inspected.

The district court's disposition subsumes two conclusions; first, that OSHA's investigative plan constituted a procedural rule within the meaning of 5 U.S.C. § 551(4), and second, that the exemption from APA notice and comment requirements generally applicable to procedural rules was overridden by the plan's substantial impact on the regulated parties. We agree only with the former proposition.[2]

of establishments on the Register ("Cycle One" and "Cycle Two"). Within an inspection cycle, establishments could have been inspected in any order, but all establishments in a cycle had to be inspected, with only limited exceptions, before a new cycle was begun.

Kast was number one on OSHA's High Ranking Industries List of the Health Inspection Plan. Pursuant to CPL 2.25B, the OSHA Baton Rouge Area Office (which attempted to conduct the inspection here) first determined that it would conduct 25 health inspections in fiscal year 1982. The Area Director then doubled the number of scheduled inspections and selected the first 50 establishments on the Establishment List in consecutive order. The 50 establishments were ·then divided into two inspection cycles, each containing 25 establishments—a procedure that resulted in Kast being selected for an inspection during the first cycle. Kast was the first establishment from cycle one selected for inspection in fiscal year 1982.

CPL 2.25B sets out different procedures to determine whether a safety inspection should be conducted. Under this plan, the compliance officer examined the Workmen's First Report Of Injury Records and the OSHA 200 Log of Injury and Illnesses and computed the company's lost

workday injury rate. If the rate was below the national average, as determined by the most recent BLS survey, and if there was general agreement between the workers' compensation injury records and the corresponding OSHA 200 Log data, then no safety inspection was made. In the instant case, OSHA computed the company's lost workday injury rate, determined that it was below the national average, and informed the company that OSHA would not conduct a safety inspection.

2. Whether agency action constitutes a "rule" within the APA, 5 U.S.C. § 551(4), is significant apart from whether, assuming the existence of a rule, notice and comment is required by the Act, *id.* § 553. In addition to implicating the informal rulemaking provisions of § 553, holding an agency action to be a rule "can also affect the weight the agency action must be given in future agency practice and upon judicial review." *Batterton v. Marshall*, 648 F.2d 694, 699–700 (D.C.Cir.1980) (*citing Joseph v. United States Civil Service Comm'n*, 554 F.2d 1140, 1153 n. 24 (D.C.Cir.1977)); *see Avoyelles Sportsmen's League v. Marsh*, 715 F.2d 897, 909 (5th Cir. 1983). We therefore consider the definitional status of CPL 2.25B independently from wheth-

### A. Whether CPL 2.25B Was a Rule[3]

With certain exceptions, the APA directs that administrative agencies afford notice of a proposed rulemaking and an opportunity for public comment prior to the rule's promulgation, amendment, or modification. 5 U.S.C. § 553. We begin by evaluating appellant's first claim, that the inspection plan does not fit within the Act's definition of a "rule." *See id.* § 551(4).

■■■■ Before doing so, we note that this Court is not bound by an administrative agency's classification of its own action. *CBS, Inc. v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 908 (5th Cir.1983); *Brown Express,* 607 F.2d at 700; *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 481–82 (2d Cir.1972); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 743–45 (3d Cir.1969). The reason for this standard is clear. Although the courts must recognize broad administrative discretion whether to implement procedures above the *minima* required by Congress, *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 544–49, 98 S.Ct. 1197, 1211–14, 55 L.Ed.2d 460 (1978), an agency cannot outflank either the strictures of its enabling legislation or the APA's rulemaking framework by definitional fiat. *See International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979); *Zuber v. Allen,* 396 U.S. 168, 193, 90 S.Ct. 314, 328, 24 L.Ed.2d 345 (1969); *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d

839 (1965). A paisley ribbon will not make up for damaged goods; the substance, not the label, is determinative. *See Western Coal Traffic League v. United States,* 694 F.2d 378, 392 & n. 61 (5th Cir.1982), *vacated in part en banc,* 719 F.2d 772 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984); *American Trucking Associations, Inc. v. ICC,* 659 F.2d 452, 462–64 (5th Cir.1981), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983); *Chamber of Commerce v. OSHA,* 636 F.2d 464, 468 (D.C.Cir. 1980); *Energy Consumers & Producers Association, Inc. v. Department of Energy,* 632 F.2d 129, 142 (Temp.Emer.Ct.App.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980).

The nomenclature of administrative action has its genesis in the APA. The Act states that " 'rule' means the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the ... procedure of an agency ...." 5 U.S.C. § 551(4). The OSHA inspection plan falls squarely within these terms; CPL 2.25B sets forth a procedure for selecting employers for safety and health inspections pursuant to the Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. § 657 (1982).

Nevertheless, averring to the distinction between rulemaking and investigation,[4] the Secretary urges that because the inspection plan does not require any action on the part of those regulated, the plan is more in the nature of a preliminary investigation than it is a prescriptive statement. The Secre-

---

er OSHA should have invoked rulemaking procedures. *See* note 5 *infra.*

**3.** Appellant failed to argue before the district court that CPL 2.25B is not a rule within the APA, 5 U.S.C. § 551(4). Although this court will usually consider only those issues raised below, we are flexible in our approach when pure questions of law are involved and when not considering them would result in a miscarriage of justice. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1364 (5th Cir.1983); *French v. Estelle,* 696 F.2d 318, 319 (5th Cir.1982), *cert. denied,* 461

U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983). A proper characterization of the Secretary's inspection plan presents a purely legal question that is entwined with whether notice and comment rulemaking should have been provided. We therefore have no difficulty evaluating whether the plan was a rule.

**4.** *See, e.g., United States v. W.H. Hodges & Co.,* 533 F.2d 276, 278 (5th Cir.1976) (per curiam). *See generally* 3 B. Mezines, J. Stein, & J. Gruff, *Administrative Law,* § 19.01, at 19–2 (rev. ed. 1984).

tary asserts that investigative action merely facilitates an agency's gathering of information, while a rule has a more immediate or direct effect on those regulated because it requires or prohibits conduct.

These categories are not mutually exclusive, however. In many cases, information-gathering can be the result of a rule, *see, e.g., Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 9 (1st Cir.1982), and preliminary investigative activity can mold conduct in clearly identifiable ways, *see, e.g., Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.*, 589 F.2d 658, 664–68 (D.C.Cir.1978). To state that a line exists between investigative activity that anticipates the promulgation of a rule (or the initiation of enforcement proceedings) and the rule itself demarcates only a vague result—it does not illumine the content of the distinction.

That distinction is marked by a particular action's niche along a spectrum of administrative activity. The characterization of agency action as investigative or rule-based is not a function of impact on those potentially subject to the agency's mandate;[5] instead, we must look to the intrinsic nature of the action in terms of the way an agency does business. *Cf. Joseph v. United States Civil Service Commission*, 554 F.2d 1140, 1153 n. 24 (D.C.Cir.1977) ("The relevant distinction between ... rules is not the nature of the questions they address but the authority and intent with which they are issued and the resulting

effect on the power of a court to depart from ... the rule.")

We do not see how CPL 2.25B could constitute an investigative action to the exclusion of its status as a rule. The purpose of an administrative investigation is to uncover facts with an eye towards the potential initiation of an agency adjudication, *see U.S. v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *cf. Genuine Parts Co. v. FTC*, 445 F.2d 1382 (5th Cir.1971) (distinguishing agency investigations from adjudications), or, more generally, for the purpose of facilitating an agency's regulatory goals, *see FCC v. Schreiber*, 381 U.S. 279, 289–94, 85 S.Ct. 1459, 1467–69, 14 L.Ed.2d 383 (1965); *Appeal of FTC Line of Business Report Litigation*, 595 F.2d 685, 695–96 (D.C.Cir.) (per curiam), *cert. denied sub nom. Milliken & Co. v. FTC*, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978).[6] An investigation discovers and produces evidence, *Genuine Parts*, 445 F.2d at 1388; it can take place only after the agency has decided to investigate, and the procedures by which this determination is made are separate from and precede the agency's ultimate act. The creation and use of CPL 2.25B to select employers for inspection did not of itself constitute investigation; rather, the plan sets forth procedural steps to guide the agency in exercise of its statutory authority to conduct inspections.[7] *See* 29 U.S.C. § 657(a), (g)(2).

---

5. The question of effect or impact speaks to the issue of whether a rule is exempt from APA notice and comment requirements. *See* 5 U.S.C. § 553; Section B *infra*. The Secretary cites cases in support of his position that do not address the question of what is a "rule" within § 551(4) but that consider impact in the context of deciding whether § 553's informal rulemaking provisions apply. *See* Brief for Appellant at 15 & n. 11 (*citing Environmental Defense Fund, Inc. v. Costle*, 636 F.2d 1229, 1255–56 (D.C.Cir. 1980); *Appeal of FTC Line of Business Report Litigation*, 595 F.2d 685, 695–96 & n. 48 (D.C. Cir.) (per curiam), *cert. denied sub nom. Milliken & Co. v. FTC*, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978); *Montship Lines, Ltd. v. Federal Maritime Board*, 295 F.2d 147, 154 (D.C.Cir. 1961)). Consideration of the notice and com-

ment requirement must follow, not coincide with, the determination that agency action constitutes a rule. Phrased differently, the dog must wag his own tail.

6. Agencies may, of course, investigate for a variety of other purposes, such as licensing, reporting to Congress, and disseminating information to the public. *See, e.g., Ash Grove Cement Co. v. FTC*, 577 F.2d 1368, 1375 (9th Cir.), *cert. denied*, 439 U.S. 982, 99 S.Ct. 571, 58 L.Ed.2d 653 (1978).

7. To the extent that any action by an agency is theoretically in furtherance of its legislated purpose, rules of agency procedure necessarily "implement, interpret, or prescribe law or policy" within the meaning of the APA, 5 U.S.C.

■ Even if the agency's plan fell within the ambit of investigative activity, the language of OSHA's enabling legislation and the APA strongly suggests classifying CPL 2.25B as a rule. Section 8 of OSH Act states the "[t]he Secretary [of Labor] and the Secretary of Health and Human Services shall each prescribe such rules and regulations as he may deem necessary to carry out their responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment." *Id.* § 657(g)(2). The Secretary thus possesses the authority to issue both procedural and legislative rules regarding workplace inspections. *Chamber of Commerce*, 636 F.2d at 468; *Cerro Metal Products v. Marshall*, 620 F.2d 964, 982 (3d Cir.1980). Moreover, the APA indicates that any such agency action will necessarily constitute a rule. The Act states that "inspection ... or other investigative act or demand may not be issued, made, or enforced except as authorized by law." 5 U.S.C. § 555(c). Since an agency act designed to implement law is by definition a rule,[8] *see id.* § 551(4), it follows that all regulations regarding the method of workplace inspections are rules.[9] *See Chaney v. Heckler*, 718 F.2d 1174, 1185–88 (D.C.Cir.1983), *cert. granted*, —— U.S. ——,

104 S.Ct. 3532, 82 L.Ed.2d 838 (1984); *Center for Auto Safety v. National Highway Traffic Safety Administration*, 710 F.2d 842, 845–46 (D.C.Cir.1983) (per curiam).

None of this is to say that classification as a rule triggers notice and comment. While the definition of a rule is broad, the rigors of the APA do not apply to all such administrative actions. *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908 (5th Cir.1983); *Batterton v. Marshall*, 648 F.2d 694, 700 (D.C.Cir.1980). The Secretary has attempted to re-mold the Act's basic definition of a rule in search of a result that can be derived in a more principled way from elsewhere in the Act. We now turn to this more central question.

### B. The Rulemaking Exemption and Substantial Impact

The APA expressly exempts "rules of agency organization, procedure, or practice" from the requirements of notice and comment rulemaking. 5 U.S.C. § 553(b)(A). This exemption, as well as others specified proximately in the Act,[10] is a consequence of Congress's belief that "certain administrative pronouncements [do] not require public participation in their formulation," *Pacific Gas & Electric Co. v.*

---

§ 551(4). While the courts have never interpreted this definitional overlap to read all content out of the notion of "procedural rules"—in chief because the APA expressly recognizes the existence of such rules and exempts them from notice and comment requirements, *see id.* §§ 551(4), 553(b)(A)—the nebulous substance-procedure dichotomy has led to a judicially crafted "substantial impact" test. This analysis, which contemplates whether a procedural rule (or, conceivably, an interpretive rule or general statement of policy) should remain exempt from notice and comment, attempts to narrow the gulf between what may be procedural in form yet legislative in effect. The test is discussed more fully in Section B *infra*.

**8.** A rule pertaining to investigative action will inevitably be "of general or particular applicability and future effect," 5 U.S.C. § 551(4); the relevant definitional language, then, speaks to whether the agency action is in exercise of its congressionally delegated authority.

**9.** *Cf.* K. Davis, *Administrative Law Treatise* § 7:8, at 172–73 (Supp.1982) (stating similar argument at level of legislative/interpretive rule

distinction). We take a slightly different tack from that suggested by the D.C. Circuit in *FTC Line of Business Report Litigation*, where the court held that FTC informational report orders constituted not a rule but an investigative act. 595 F.2d at 695 & n. 48. Rather than place such orders outside the scope of the APA's definition of a rule, we note that the APA does not exempt any form of agency action from falling under the general rubric of a "rule," § 551(4), whereas it expressly exempts certain types of rules from the panoply of rulemaking procedures, § 553(b)(A), (B). Even where both approaches might reach the same conclusion regarding the exemption from notice and comment rulemaking, the distinction between finding administrative action not to be a rule and finding it to be a rule exempt from notice and comment is not solely of academic interest. *See* note 2 *supra*.

**10.** Section 553(b)(A) also exempts rules dealing with nine substantive areas, as well as all interpretive rules and general statements of policy, from informal rulemaking.

*FPC,* 506 F.2d 33, 37 (D.C.Cir.1974). In exempting procedural rules, Congress has placed a premium on efficiency by avoiding the often cumbersome and time-consuming mechanisms of public input. *See Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877–881 (3d Cir.1982); *cf. SEC v. Chenery Corp.,* 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) (discussing need for agency flexibility in face of the unforeseeable). This judgment prevailed despite the widely-shared recognition that administrative agencies need direct lines to the public voice because of their distance from the elective process.[11]

 It is beyond dispute that CPL 2.25B is, on the surface, a procedural rule.[12] "The central distinction among agency regulations found in the APA is that between 'substantive rules' on the one hand and 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice' on the other." *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979) (footnote omitted). Whereas substantive or "legislative" rules affect individual rights and obligations and are binding on the courts, *id.* at 302, 99 S.Ct. at 1718; *American Trucking Association v. United States,* 688 F.2d 1337, 1341 (11th Cir.1982), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), nonlegislative rules do not have the force of law, *id.* At least initially, courts "will honor [an agency's] characterization if it reasonably

describes what the agency in fact has done." *Id.* at 1344; *see American Postal Workers Union v. United States Postal Service,* 707 F.2d 548, 558–59 (D.C.Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984).

The plan's stated purpose was to "describe[ ] the steps to be followed and the criteria to be applied in selecting workplace establishments for programmed inspection" pursuant to the OSH Act, 29 U.S.C. § 657(g)(2). CPL 2.25B(A), at 1. Moreover, the plan does not purport or seem to create new law; instead, it contained an OSHA policy of "simplified ... scheduling procedures in order to ease the administrative burden." CPL 2.25B(E)(4)(b), at 3. The Secretary used CPL 2.25B to concentrate OSHA's inspection resources in industries with the highest potential for safety and health violations. *See* CPL 2.25B(E)(4)(c), at 3. The plan is procedural on its face. *Accord Stoddard Lumber Co. v. Marshall,* 627 F.2d 984, 988 (9th Cir. 1980).[13]

This conclusion, however, does not end our inquiry. As noted earlier,[14] the distinction between a rule of procedure and one of substance is not black and white. *See Avoyelles Sportsmen's League,* 715 F.2d at 909; *Batterton,* 648 F.2d at 702–03 & nn. 37–38. We do not subscribe the poetic license of "a rule is a rule is a rule." Just as we must look beyond the label in determining whether agency action is a

---

**11.** "[P]ublic participation ... in the rulemaking process is essential in order to permit administrative agencies to inform themselves, and to afford safeguards to private interests." S.Doc. No. 248, 79th Cong., 2d Sess. 19–20 (1946).

**12.** Kast does not contest this classification. *See* Brief for Appellees at 25.

**13.** For similar reasons, the courts have recognized that other agency instructions to agency officers are not legislative rules. *See, e.g., Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam) (SSA Claims Manual without legal effect); *Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 362 & n. 11 (5th Cir.1977) (HUD handbook not intended to have force of law); *Powderly v.*

*Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983) (SSA claims manual without impact on substantive rights); *Gatter v. Nimmo,* 672 F.2d 343, 347 (3d Cir.1982) (VA manuals without force of law); *First State Bank of Hudson County v. United States,* 599 F.2d 558, 564 (3d Cir.1979), (FDIC Manual setting up agency procedure was not substantive rule), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Concerned Residents of Buck Hill Falls v. Grant,* 537 F.2d 29, 38 (3d Cir.1976) (Soil Conservation Service manuals were merely internal operating procedures and not binding on agency); *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 376 (8th Cir.1974) (Secretary's field operations handbooks without force of law).

**14.** *See* note 7 *supra.*

"rule," [15] we must make a similar probe in categorizing the type of rule for purposes of APA notice and comment under section 553.

Inevitably, in determining whether the APA requires notice and comment rulemaking, the interests of agency efficiency and public input are in tension. The exemption from informal rulemaking requirements for procedural rules reflects the congressional judgment that such rules, because they do not directly guide public conduct, do not merit the administrative burdens of public input proceedings. In applying this exemption, then, courts have been less concerned with the formal appellation of a rule—whether it is "procedural" or "substantive"—than with its effect on those within its regulatory scope. *See, e.g., Avoyelles,* 715 F.2d at 908–10; *Lamoille Valley Railroad Co. v. ICC,* 711 F.2d 295, 327–28 (D.C.Cir.1983); *National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932, 949 (D.C.Cir. 1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983); *Cabais v. Egger,* 690 F.2d 234, 237 (D.C.Cir.1982); *Brown Express, Inc. v. United States,* 607 F.2d 695, 700–03 (5th Cir.1979). In *Brown Express,* we recognized that a seemingly procedural rule does not have its apparent nature cast in stone for purposes of APA rulemaking requirements:

"[W]hen a proposed regulation of general applicability has a *substantial impact* on the regulated industry, or an impor-

tant class of the members or the products of that industry, notice and opportunity for comment should first be provided." [*Pharmaceutical Manufacturers Association v. Finch,*] 307 F.Supp. 858, 863 (D.Del.1970) (emphasis added). The exemption of section 553(b)(A) from the duty to provide notice by publication [and a forum for public comment [16] ] does not extend to those procedural rules that depart from existing practice and have a substantial impact on those regulated. *Id.* at 702. In essence, the substantial impact test is the primary means by which courts look beyond the label "procedural" to determine whether a rule is of the type Congress thought appropriate for public participation. *See Pickus v. United States Board of Parole,* 507 F.2d 1107, 1114 (D.C. Cir.1974). An agency rule that modifies substantive rights and interests can only be nominally procedural, and the exemption for such rules of agency procedure cannot apply.[17] *Accord National Association of Home Health Agencies,* 690 F.2d at 949.

Kast urges that, having found CPL 2.25B to be a procedural rule, we should nevertheless not give effect to the APA's procedural rules exemption from informal rulemaking [18] requirements because the rule has substantial impact on those regulated. We disagree.

OSHA's inspection plan casts not the stone of substantial impact. We add our voice to the court's in *Stoddard Lumber*

---

**15.** *See* Section A *supra.*

**16.** Although § 553(b)(A) by its terms exempts certain rules from only the notice requirement, the comment requirement of § 553(c) applies only if the notice provision does. *See Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1112 n. 9 (D.C.Cir.1974).

**17.** " 'Section 553 was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those who are regulated.' " *Batterton,* 648 F.2d at 705 (*quoting Texaco, Inc. v. FPC,* 412 F.2d 740, 744 (3d Cir.1969)).

**18.** "Informal rulemaking" refers to the notice and hearing guidelines set forth in the APA, 5

U.S.C. § 553. Subject to its self-contained exceptions, § 553 applies whenever an agency promulgates a rule pursuant to legislation that does not require more stringent rulemaking procedures specified in the Act, *id.* §§ 556, 557. The latter, formal rulemaking requirements are invoked in the infrequent event that the agency's creating statute directs that rules be "made on the record after opportunity for agency hearing." *Id.* § 553(c). *See generally* 3 B. Mezines, J. Stein, & J. Gruff, *Administrative Law* §§ 15.-01, .03[1], at 15–3 to –5, 15–18 to –25 (rev. ed. 1984). Because the OSH Act affords only a general authorization for the Secretary to promulgate rules and regulations, *see* Section A *supra,* the necessity for formal rulemaking is not before us.

*Co. v. Marshall,* 627 F.2d 984 (9th Cir. 1980),[19] where the Ninth Circuit concluded that a previous version of the plan now before us did not merit notice and comment procedure.[20] *Id.* at 987–88; *see In re Trinity Industries,* No. Misc.–J–83–131–12 (M.D.Fla.1984); *In re Establishment of Chicago Aluminum Castings Co.,* 535 F.Supp. 392, 397 (N.D.Ill.1981); *cf. Donovan v. Wollaston Alloys, Inc.,* 695 F.2d 1,

9 (1st Cir.1982) (holding previous OSHA inspection plan did not have significant impact on substantive rights of employers within publication provision of 5 U.S.C. § 552(a)(1) (1976)). CPL 2.25B has no cognizable impact, substantial or otherwise, on any right or interest of Kast. While the company has an "interest ... in being free from *unreasonable* intrusions onto its property by agents of the government,"

---

**19.** In *Rivera v. Becerra,* 714 F.2d 887 (9th Cir. 1983), *cert. denied sub nom. International Union, United Auto., Aerospace and Agricultural Implement Workers v. Donovan,* —— U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984), the Ninth Circuit reconsidered the validity of the substantial impact test and rejected it as contrary to the Supreme Court's holding in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). In *Vermont Yankee,* the Court admonished that

[section 553] established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures. Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them. This is not to say necessarily that there are no circumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute. But such circumstances, if they exist, are extremely rare.

*Id.* at 524, 98 S.Ct. at 1202 (footnote omitted). The Ninth Circuit held that this language proscribes courts from thinking in terms of "substantial impact" because such ruminations "engraft '[judicial] notions of proper procedures upon agencies' beyond the requirements of section 553." *Rivera,* 714 F.2d at 891 (*quoting Vermont Yankee,* 435 U.S. at 525, 98 S.Ct. at 1202).

We sift a different message from *Vermont Yankee.* The above-quoted phrasing speaks to the courts' role once it has been determined that notice and comment is required. This concern is far different from the judicial capacity to interpret the APA's language in determining whether an agency should have instituted rulemaking proceedings in the first place. The courts can certainly undertake this latter task. *See, e.g., International B'hd of Teamsters v. Daniel,* 439 U.S. 551, 656 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979); *Batterton,* 648 F.2d at 708–10.

The substantial impact test is no more than the rubric under which courts construe the terms of the APA. *See Cerro Metal Prods. v. Marshall,* 467 F.Supp. 869, 880 n. 16 (E.D.Pa.

1979), (Pollak, J.), *aff'd,* 620 F.2d 964 (3d Cir. 1980). Because the words "substance" and "procedure" defy ready application, the test represents, albeit imperfectly, the judicial attempt to pour content into their use. Viewed in this way, the concept does not "engraft" anything; it explains much.

Moreover, to the extent *Rivera* rejects the substantial impact test, it does not render *Stoddard Lumber* irrelevant to our case. We find the *Stoddard Lumber* reasoning persuasive on the issue of whether the inspection plan preceding CPL 2.25B had substantial impact. *See Stoddard Lumber,* 627 F.2d at 987–88. For our purposes it is of little consequence that a subsequent panel characterized the *Stoddard Lumber* discussion as dictum. *See Rivera,* 714 F.2d at 890–91.

Similarly, the D.C. Circuit has ruled that "the substantial impact test has no utility in distinguishing between [interpretive and substantive rules]." *Cabais v. Egger,* 690 F.2d 234, 238 (D.C. Cir.1982). Because the *Cabais* court was careful to confine the scope of its decision to the "substantive-*interpretive* dichotomy," *id.* at 237–38 (emphasis added); *but cf. Rivera,* 714 F.2d at 890–91 (rejecting substantial impact test in toto), we need only note that the substantial impact analysis has been subsequently employed by that circuit with regard to procedural rules. *See, e.g., Lamoille Valley R.R. Co. v. ICC,* 711 F.2d 295, 328 (D.C.Cir.1983).

**20.** Unlike CPL 2.25B, the OSHA rule at issue in *Stoddard Lumber* purported to articulate and consolidate agency procedures that previously had been available only implicitly in OSHA manuals and directives. This difference does not render the Ninth Circuit's position any less relevant to our case. The absence of departure from existing practice was not dispositive in *Stoddard Lumber;* rather, the court's discussion of substantial impact, while perhaps related to whether the agency had revised its inspection regulations, existed independently of the question of change qua change. Although shifts in agency practice may suggest cognizable effects on regulated parties' expectations, *see, e.g., Brown Express,* 607 F.2d at 702–03, a rule does not become any less procedural for purposes of § 553(b)(A) simply because it changes.

*Donovan v. Dewey,* 452 U.S. 594, 599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262 (1981), this interest does not extend to freedom from *any* OSHA inspection. The government still must satisfy a federal magistrate, as it did in this case, "that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305 (1981). Any fourth amendment interest, then, should be vindicated initially by the magistrate's watchful eye and, failing this, by the federal courts.[21] *See Stoddard Lumber,* 627 F.2d at 988.

Moreover, the rights and obligations of an employer within OSHA's jurisdiction exist independently of a plan whose sole purpose is the funnelling of agency inspection resources. If Kast's argument is that another directive might have spared it an inspection or given rise to one at another time, we find no merit therein. Adherence to the safety and health standards promulgated by OSHA under 29 U.S.C. § 655, should not turn on the agency's ability or inclination to play watchdog. No inspection plan creates in an employer the right to be free of citation; the relevant standards of employer conduct originate not in CPL 2.25B but elsewhere. *See* 29 U.S.C. § 654; *see also American Textile Manufacturers Institute, Inc. v. Donovan,* 452 U.S. 490, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981) (construing OSHA standard promulgated pursuant to 29 U.S.C. § 655).

This plan has less impact on the rights and interests of employers than have agency regulations requiring submission of data for investigatory purposes, *see Appeal of FTC Line of Business Report Litigation,* 595 F.2d 685 (D.C.Cir.) (per curiam), *cert. denied sub nom. Milliken & Co. v. FTC,* 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978); *United States v. W.H. Hodges & Co., Inc.,* 533 F.2d 276 (5th Cir.1976) (per

curiam), and submission to investigation preliminary to regulatory action, *see Environmental Defense Fund v. Costle,* 636 F.2d 1229 (D.C.Cir.1980), each of which has been held not to require notice and comment. Indeed, the impact of the inspection plan before us falls well short of the regulation in *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.,* 589 F.2d 658 (D.C. Cir.1978), where the court held that agency provisions for selecting, among other things, auditors and auditing criteria did not have substantial impact. *Id.* at 664–68; *see also Associated Dry Goods Corp. v. EEOC,* 720 F.2d 804 (4th Cir.1983) (holding that disclosure rule regulating access to agency's investigative files was within procedural rules exemption from informal rulemaking). Kast would have the APA's procedures interjected here when OSHA is merely playing a rational version of eenie-meenie-minie-moe so as to select someone neutrally for an inspection. Even when measured against the previous inspection plan, this method seems devoid of the gargantuan intrusiveness and radical change that we are told exists.

Finally, appellees assert that our disposition in *Donovan v. Huffines Steel Co.,* 645 F.2d 288 (5th Cir.1981), *aff'g mem.* 488 F.Supp. 995 (N.D.Tex.1979), requires a finding of substantial impact in this case. *See also Cerro Metal Products v. Marshall,* 620 F.2d 964, 981–82 (3d Cir.1980). The OSHA rule at issue in *Huffines* dispensed with an agency practice that afforded employers the opportunity to contest the validity of inspection warrants prior to their issuance. The court held that the Secretary could not promulgate this ostensibly procedural rule without notice and comment because the sudden availability of *ex parte* warrant proceedings had a substantial impact on the expectations and conduct of employers with regard to OSHA inspection activity. 488 F.Supp. at 1000–

---

**21.** Upon issuance of the warrant, an employer may, as Kast has done here, move before the district court to quash the warrant prior to its execution, or it may assert its claims in the course of a civil contempt proceeding brought

by the Secretary upon the employer's denial of entry. Alternatively, the employer may bring its objections to the Commission upon citation, and ultimately to the circuit courts of appeals. 29 U.S.C. §§ 659(c), 660(a).

01. The *ex parte* warrant rule at issue in *Huffines* constituted a "180-degree shift" in agency practice, *id.* at 1001, thereby closing off an entire avenue of employer input that potential inspection targets had come to rely on in their dealings with the agency. *See National Association of Home Health Agencies,* 690 F.2d at 949–50; *American Trucking Association,* 688 F.2d at 1348; *Brown Express,* 607 F.2d at 702–03.

In our case, however, appellee asserts no defeated expectations as a result of CPL 2.25B. We would be surprised if it could. Although the plan departed from a previous inspection formula, *see* CPL 2.25B(E)(4)(c), at 3, change alone is insufficient to satisfy the twin prongs of departure and substantial impact found in *Brown Express,* 607 F.2d at 702. In addition, although the plan affects every employer subject to OSHA's jurisdiction, this reason is only tangentially relevant to a discussion of substantial impact. All agency rules will in some way affect those within the agency's grasp. Such is the nature of rules. To find substantial impact in a rule that is procedural in all respects other than in its numerical reach would lead us into an abyss of infinite regression.[22] The substantive effect of CPL 2.25B is purely derivative: the source of the employers' woes is the OSH Act itself as well as in the legislative rules promulgated in its shadow, which alone are responsible for having shaped employer conduct.

### CONCLUSION

We do not subscribe to the edict that every administrative proclamation, fiat, or decree constitutes a rule mandating the rigors that appellant would apply to this case. Words such as "rule," "impact," "procedure," et cetera, must contain within their syllables an alphabetical concatenation: the application of practicality and reasonableness, and the actual on-the-site effect upon the agency as well as upon the employer of whatever has been promulgated. Were Kast correct, any system within an agency that determines who should proceed against whom would be an APA matter of intrusion, domination, or substantive regulation. We would foresee aeons of rulemaking proceedings when all the agency seeks to do is operate in a rational manner. *Cf. Donovan v. Union Packing Co. of Omaha,* 714 F.2d 838, 840 (8th Cir. 1983) (holding constriction of Secretary's independent subpoena power to be inconsistent with enforcement of OSH Act).

It has been almost three years since OSHA attempted to inspect this employer for health violations. Because the district court should have honored the inspection warrant, we reverse the judgment below and remand with instructions to dismiss appellee's motion to quash. Let the die be Kast.

REVERSED and REMANDED.

---

**22.** The Court of Appeals in *Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229 (D.C. Cir.1980), expressed a like sentiment regarding the Environmental Protection Agency's ("EPA") initiation of "preliminary investigations as a first step toward determining whether or not to promulgate regulations." *Id.* at 1255. Implying that notice and comment would hamstring the agency, the court extrapolated,

> Under this theory EPA would be required to initiate "rulemaking" proceedings to decide what investigatory programs it can set up to help it determine whether it should undertake to promulgate regulations. It is not immediately clear why this first "rulemaking" should not itself be preceded by "rulemaking" to determine what procedures should be employed to decide whether there is a need for an investigatory program in the first place.

*Id.* at 1256 n. 93. Administrative agencies should not be straitjacketed by rulemaking proceedings so as to thwart the exercise of congressional wisdom.