IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50758
_____


TEXAS SAVINGS & COMMUNITY BANKERS ASSOCIATION, et al.,

Plaintiffs-Appellants

-vs-

FEDERAL HOUSING FINANCE BOARD,

Defendant-Appellee


_____

Appeal from the United States District Court
Western District of Texas
_____

January 20, 2000


Before POLITZ and STEWART, Circuit Judges, and LITTLE, District Judge.[*]


LITTLE, District Judge:

Today, we consider the district court's approval, by way of summary judgment in favor of the Federal Housing Finance Board, of a novel method to fund housing mortgage loans by Federal Home Loan Banks. For the reasons that follow, we affirm the decision of the district court.[1]

No one contests the fact that since the Great Depression, the central government has attempted to facilitate man's acquisition of adequate housing. The Federal Home Loan Bank Act was passed in 1932. *See* Federal Home Loan Bank Act, 12 U.S.C § 1421, *et seq*. Under that act, a

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[1] *See Texas Sav. & Community Bankers Ass'n v. Federal Housing Finance Board*, No. A 97 CA 421 SS, 1998 WL 842181 (W.D.Tex. June 25, 1998).

league of twelve regional Federal Home Loan Banks was established. Each regional bank is supported by its members and its members are local savings and loan associations, banks, savings banks, and similar financial institutions. Quite simply, the act authorizes the regional Federal Home Loan Bank ("FHL Bank") to lend money to its members, which in turn lend the money to homeowners.

Ten years ago, Congress created the Federal Housing Finance Board ("FHFB"). *See* Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 413 (1989). The Finance Board is an oversight agency designed to assure that the FHL Banks perform the mission of their creation, i.e., assist members in providing housing finance. The FHL Bank of Chicago devised an innovative pilot program to enlarge and facilitate lending of its members to current and future home owners. The name given to the plan is Mortgage Partnership Finance ("MPF") pilot program. The Finance Board approved implementation of the pilot project by the FHL Bank of Chicago.

Pursuant to the MPF pilot program, the member lenders contact potential borrowers, investigate their creditworthiness, and originate the loan. Only at the point of closing do the distinctive characteristics of the MPF pilot program come into play. At that point, the FHL Bank becomes the mortgagee and provides the funds to the individual borrower using the member lender as its agent. The member lender's involvement does not end there. The member lender continues to service the loan. In exchange for a fee, the member lender also provides a second loss credit enhancement to the FHL Bank.[2] The credit enhancement is calculated to be equivalent to the level of subordination required for a AA rating from Standard & Poors.

Believing that the Finance Board overstepped the authority granted to it by law, various lenders sought a declaratory judgment and injunctive relief from the United States District Court for

---

[2] This credit enhancement covers losses over and above the historical loss amount for mortgages of the same type and geographic location.

the Western District of Texas.  The facts are not in dispute.  Statutory construction is the gravamen

of this case and ripe for determination by decision on cross motions for summary judgment.

Succinctly stated, the Federal Housing Finance Board asserts that its authority to approve the

Mortgage Partnership Finance plan is found in the incidental powers provisions of the Federal Home

Loan Bank Act.  The plaintiff appellants, who are lenders who believe that the government sponsored

program impermissibly competes with the private sector, contend that the act removes the power

from the FHL Banks to entertain this type of program.

This Court reviews the disposition of summary judgments by the district court *de novo*.  *See*

*Meditrust Financial Services Corporation v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th

Cir 1999).  This Court's review of statutory construction by an administrative agency is guided by

the principles enunciated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984):

> When a court reviews an agency's construction of the statute it administers, it is
> confronted with two questions.  First, always, is the question of whether Congress has
> directly spoken to the precise question at issue.  If the intent of Congress is clear, that
> is the end of the matter; for the court, as well as the agency, must give effect to the
> unambiguously expressed intent of Congress.  If, however, the court determines
> Congress has not directly addressed the precise question at issue, the court does not
> simply impose its own construction on the statute, as would be necessary in the
> absence of an administrative interpretation.  Rather, if the statute is silent or
> ambiguous with respect to the specific issue, the question for the court is whether the
> agency's answer is based on a permissible construction of the statute.

*Chevron* at 842-843 (footnotes omitted).  This Court will apply the "traditional tools of statutory

construction," *id*. at 843 n.9, to determine whether Congress has spoken to the precise point in issue.

*See id.* at 842-843; *United Services Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996).  If that

inquiry proves unavailing, then this Court will determine if the FHFB's interpretation is a permissible

one.  *See id.*

The FHFB argues that the MPF pilot program is valid as an exercise of the FHL Bank's

incidental powers.  Under the heading of general powers, the Federal Home Loan Bank Act

authorizes FHL Banks "to do all things necessary for carrying out the provisions of this Act and all

3

things incident thereto." 12 U.S.C. § 1431(a). The FHFB points to the housing finance mission of the FHL Banks as an activity to which the MPF pilot program is incidental.

The FHFB is obligated by law to "to ensure that the Federal Home Loan Banks carry out their housing finance mission[.]" 12 U.S.C. § 1422a(a)(3)(B). The primary method by which the FHL Banks accomplish this task is the making of advances to member lending institutions. These advances aid the retail lenders in achieving the necessary liquidity to finance the purchase of residential property. The FHFB contends that the MPF pilot program is another method by which the FHL Banks can be a reservoir of liquidity. The precise question therefore is whether the incidental powers authorized under the act are broad enough to permit such a program as incident to this housing finance purpose.

Step one of *Chevron* requires this Court to ascertain whether the statute is silent or ambiguous in addressing the precise question at issue. *See Chevron*, 467 U.S. at 842. "A statute is ambiguous if it is susceptible of more than one accepted meaning." *Perry*, 102 F.3d at 146. Webster's defines incident as "contingent upon or related to something else." WEBSTER'S II: NEW RIVERSIDE UNIVERSITY DICTIONARY 618 (1988). Black's Law Dictionary defines incident as "something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance." BLACK'S LAW DICTIONARY 762 (6th ed.1990). It is uncontestable that the MPF pilot program is related to housing finance.[3] The proximity of that relationship however is a more difficult question.[4] Determining which types of activities have the necessary proximity to, or

---

[3] Appellants contest the use of "housing finance mission" as the activity to which the MPF pilot program would be incidental. They argue that introductory statements of statutes should not be considered as separate activities of the FHL Banks. This argument misconstrues the placement of the term. The term is not listed in an introductory section. The mission is referred to in the list of duties assigned to the FHFB. FIRREA added the activity to the statute in 1989.

[4] Appellants also argue that the statute removes the power to invest in mortgages from the FHL Banks. They contend it does so in two ways. First, the statute specifies in detail how an advance should be made and to whom. Appellants contend that this level of specificity implicitly rejects any reliance on the incidental powers provision for a significantly different program. This contention is misplaced. The FHFB is not permitted to vary explicit restrictions placed on the making of advances by way of the incidental powers provision, but they are permitted to find new ways of accomplishing the same purpose by a different method. *See M & M Leasing Corp. v. Seattle First Nat'l Bank*, 563 F.2d 1377, 1382 (9th Cir. 1977). Appellant's second argument is that Congress rejected overtures from the FHL Banks to allow investment in mortgages in the past. "It is a rare case indeed in which legislative history alone will permit us to find that Congress has addressed the precise

4

dependence upon, the FHL Bank's housing finance mission simply cannot be an endeavor in precision. Leaving this decision to a permissible construction proffered by the FHFB is not an abdication of this Court's power of judicial review. *Cf. M'Culloch v. Maryland*, 17 U.S. 316 (1819). It is instead a recognition that where Congress deliberately created ambiguity in a statute–as it did here with the term "incident"–it meant to leave resolution of that ambiguity to the administrative agency. *See Chevron*, 467 U.S. at 844.

Step two of *Chevron* requires that this Court determine whether FHFB's construction of the statute is a permissible one. *See Chevron*, 467 U.S. at 842-843. The FHFB contends that the MPF pilot program "is simply a method of empowering member institutions to channel funds into residential housing finance in a manner that is technically more sophisticated than, yet functionally similar to, that which occurs when a FHL Bank makes an advance[.]" 1996 Finance Board Office of General Counsel Memorandum at 15.[5] As a direct result of the MPF program, member lenders profit from their lending activities while having more funds at their disposal to lend.[6] The FHL Banks as a reservoir of liquidity is also the *modus operandi* of the advances program. In addition, the FHFB argues that an important effect of the MPF pilot program is that it separates credit risk from interest rate risk and assigns each of these risks to the financial institution most capable of handling that type of risk. The member lending institution therefore retains much of the credit risk while the FHL Bank is assigned the interest rate risk. These attributes of the MPF pilot program encourage member lenders to increase the level of housing finance in which they are involved. This Court holds that the

---

question at issue." *Perry*, 102 F.3d at 148 n.4 (quotations omitted). Moreover, Congress has not been confronted with, or rejected, an MPF-type program. In fact, in 1992, Congress asked the FHFB and its sister agencies to determine the feasibility of FHL Bank's investment in mortgage-related assets. *See* Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102-550, § 1393(a)(4), 106 Stat 3672, 4009 (1992)(asking regulatory agencies to report on "the advantages and disadvantages of expanding credit products and services for member institutions of the Federal Home Loan Bank System, including a determination of the feasibility of Federal Home Loan Banks . . . purchasing housing-related assets from member institutions[.]").

[5] Appellants argue that this construction of the statute is contrary to long standing interpretation of the Act by the FHFB. No authority cited by the appellant demonstrates that the FHFB construed incidental powers in a way different than they do here. The FHFB's construction of the investments provisions is not applicable to the analysis above which relies on the housing finance mission for the requisite authority. Most importantly, the FHFB was not confronted with a MPF-type program until 1996.

[6] This is in part due to the capital reserve requirements imposed by various federal regulations. Because the member banks have fewer loans on their books (the loans are on the books of the FHL Banks), the member banks are not required to maintain a higher level of reserves. These additional funds can then be used for lending activity as well.

FHFB's construction is a permissible one because it is consistent with the structure and purpose of the Federal Home Loan Bank Act, i.e., to use the FHL Bank's access to low-cost funds in the securities markets in an effort to improve the level of housing finance. *Cf.* 5 U.S.C. § 706 (2)(A)(authorizing judicial review of agency determinations to determine if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

Finally, the appellants argue that relevant actions by the Federal Housing Finance Board did not conform to the notice and comment provisions of the Administrative Procedure Act and are therefore invalid. Appellants point to two specific actions: (1) as to the amendment of the Financial Management Policy ("FMP") and (2) as to the acceptance by the FHFB of the MPF pilot program of the Federal Home Loan Bank of Chicago.

The amendment of the FMP is not a substantive rule. The FMP is a list of investment guidelines; it therefore required no notice or comment. *See* 5 U.S.C. § 553(b)(3)(A). Substantive or legislative rules affect individual rights and obligations and are binding on the courts. *See Department of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1152 (5th Cir. 1984) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)). Non-legislative rules, on the other hand, "'genuinely leave the agency and its decisionmakers free to exercise discretion.'" *Professionals and Patients for Customized Care v. Shalala,* 56 F.3d 592, 595 (5th Cir. 1995)(quoting *Community Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987) (footnote omitted). The FHFB added FMP § II.B.12 to "establish policy on the use of funds not required for credit programs or operations" and "explicitly [to] permit the purchase of mission-related and liquid assets." FMP Subpart II.A. The FHL Banks are not required to invest in MPF-type assets. The program is completely voluntary. The FHL Banks retain the same discretion they had prior to the amendment: "[e]ach Federal Home Loan Bank will be responsible for determining the extent to which its investment authority will be used to augment income from advances." *Id.*

6

Appellants also challenge the acceptance by the FHFB of the particular MPF pilot program submitted by the Federal Home Loan Bank of Chicago. The approval of the FHLBank of Chicago's request does not qualify as a rule-making in that it did not impose a new requirement on the FHL Banks or prescribe new policy. *See* 5 U.S.C. § 551(4). It therefore does not require prior notice and comment.

For the foregoing reasons, we AFFIRM the decision of the district court.