**AULENBACK, INC. and Truckers United for Safety, Petitioners,**

v.

**FEDERAL HIGHWAY ADMINISTRATION, Respondent.**

Nos. 96–1045, 96–1057, 96–1142, 96–1143.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1996.

Decided Jan. 3, 1997.

---

Anthony J. McMahon, argued the cause and filed the briefs, Washington, DC, for petitioners.

John S. Koppel, Attorney, U.S. Department of Justice, argued the cause, for respondent, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., U.S. Attorney, and William Kanter, Deputy Director, U.S. Department of Justice, were on the brief.

Before: WALD, SENTELLE and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Petitioners Aulenback, Inc. ("Aulenback"), and Justin Transportation Co., Inc. ("Justin"), commercial trucking companies, seek review of separate orders issued by the Federal Highway Administration ("FHWA") under the authority of the Secretary of Transportation, requiring them to cease all interstate motor carrier activities. Petitioner Truckers United for Safety ("TUFS"), a non-profit trade organization of which both Aulenback and Justin are members, joins in their petitions. Petitioners also ask the court to enjoin the FHWA from issuing similar orders based on procedures in an administrative training manual. Because the FHWA has conditionally rescinded the out-of-service orders pursuant to consent agreements with Aulenback and Justin, we hold that any controversy relating to these orders is moot and dismiss the petitions seeking a declaration that the orders were void *ab initio*. We also conclude that petitioners' substantive challenge to the contents of the manual is not ripe for review, but that the agency was not required to comply with the notice and comment provisions of the Administrative Procedure Act ("APA") before utilizing the manual. Accordingly, we deny the request for prospective injunctive relief.

### I.

The FHWA ordered Aulenback and Justin to cease operations early in 1996, pursuant to its authority under 49 U.S.C. § 521(b)(5)(A), which provides, in relevant part, that:

If, upon inspection or investigation, the Secretary [of Transportation] determines that a violation of [certain statutory safety provisions and accompanying regulations] poses an imminent hazard to safety, the Secretary shall order a vehicle or employee operating such vehicle out of service, or order an employer to cease all or part of the employer's commercial motor vehicle operations. In making any such order, the Secretary shall impose no restriction on any employee or employer beyond that required to abate the hazard. Subsequent to the issuance of the order, opportunity for review shall be provided in accordance with section 554 of title 5, except that such review shall occur not later than ten days after issuance of such order.

An "imminent hazard" is defined as "any condition of vehicle, employee, or commercial motor vehicle operations which is likely to result in serious injury or death if not discontinued immediately." *Id.* § 521(b)(5)(B). Final orders of the Secretary issued under this section are reviewable in the courts of appeals. *Id.* § 521(b)(8).

Petitioners contend that the FHWA lacked the authority to order Aulenback and Justin out of service because the regulatory violations for which they were cited were not imminent hazards. We set forth the relevant facts.

### A.

**Aulenback.** On January 26, 1996, the FHWA conducted a compliance review of Aulenback's operations, and cited the company for numerous violations of federal safety regulations. The agency had documented similar violations by Aulenback in two prior compliance reviews in 1994, and had assessed civil penalties of $13,500 and $14,540. Almost immediately after completing the third compliance review, on January 29, 1995, the FHWA served an out-of-service order on Aulenback.

The out-of-service order cited Aulenback for eleven violations of federal safety regulations. Many of the violations related to Aulenback's failure to maintain adequate records. However, the FHWA also charged Aulenback with use of a driver who was physically unqualified due to hypertension, failure to correct safety related defects listed on a vehicle inspection report, use of a vehicle that had not been inspected, accepting false duty reports, and other potentially serious safety-related problems. The order further noted Aulenback's previous history of noncompliance. According to Aulenback, the FHWA also issued a news release describing its action. Aulenback maintains that on January 30, 1996, newspapers in the State of Maine, where Aulenback is based, printed articles stating that the trucking company had been shut down. As a result of the shutdown and accompanying publicity, Aulenback claims to have lost nearly 40% of its business.

Under pressure to get its trucks back on the road, Aulenback began negotiating with the FHWA for a rescission of the out-of-service order. The FHWA conditionally rescinded the order on January 31, 1996, and entered into a consent agreement and order with Aulenback on February 6, 1996. Pursuant to that agreement and order, Aulenback agreed to comply immediately with applicable federal safety regulations, and to institute specified policies to remedy the violations for which it had been cited. Aulenback also agreed that violations of the consent order could result in the imposition of civil or criminal penalties authorized by 49 U.S.C. §§ 501–526, fines of up to $1000 per violation per day up to a maximum of $10,000, or issuance of an out-of-service order to eliminate an imminent hazard. In addition, Aulenback waived any right to seek judicial review or otherwise challenge the validity of the consent order.

Despite the waiver clause, Aulenback and TUFS filed a motion before the FHWA on February 9, 1996, seeking a stay of the out-of-service order and asking the agency to "cease the practice of issuing such orders in

the absence of an imminent hazard."[1] They argued that the FHWA had not identified a safety violation that could result in serious injury or death if not discontinued immediately, as required by 49 U.S.C. § 521(b)(5)(A), but rather had shut down Aulenback based on internal FHWA "policies and procedures" pursuant to which an "imminent hazard" could be found based on a company's history of safety violations. They further claimed that the FHWA's procedures for identification of an "imminent hazard" were not in compliance with the rulemaking provisions of the APA, which generally require notice and an opportunity for public comment before a rule is issued. *See* 5 U.S.C. § 553. Subsequently, on February 26, 1996, Aulenback and TUFS filed a petition for review before the FHWA reiterating the arguments raised in their earlier motion.

On April 15, 1996, the FHWA's Associate Administrator for Motor Carriers issued a final order, disposing of both applications. The administrator dismissed Aulenback's request for a stay as moot due to the rescission of the out-of-service order, and rejected Aulenback's challenge to the validity of the out-of-service order on the basis that, in entering the consent agreement, Aulenback had waived its rights to administrative or judicial review. He rejected Aulenback's contention that it was coerced into signing the consent order, ruling that the threat of economic loss resulting from a continued shutdown did not constitute impermissible coercion. Finally, he declined to address the request that the FHWA amend its rule pursuant to which out-of-service orders may be issued in the absence of an imminent hazard, holding that Aulenback and TUFS had not established that the agency had such a rule. Aulenback and TUFS thereafter filed a petition in this court for review of the Associate Administrator's final order.

## B.

**Justin.** In 1994 and 1995, the FHWA cited Justin for violations of federal safety regulations, and imposed civil penalties of $10,500 and $10,750. Justin did not challenge the factual bases for those penalties. On February 13, 1996, a third FHWA compliance review documented additional violations. Three days later, the FHWA served an out-of-service order on Justin, citing the carrier for six violations of federal safety regulations. Five of the violations related to the company's failure to maintain adequate records, and the sixth related to accepting false duty reports from drivers. Like the Aulenback out-of-service order, the Justin out-of-service order also noted the carrier's prior history of non-compliance. In conjunction with the out-of-service order, the FHWA issued a news release, stating that it had declared Justin's operations "imminently hazardous" and "unfit" for highway transportation. Justin maintains that, as a result of the publicity accompanying the out-of-service order, its insurance company raised its premiums, forcing Justin to suspend operations.

Justin and TUFS immediately sought an emergency stay of the out-of-service order from the FHWA on February 17, 1996.[2] On February 20, 1996, they filed a petition for administrative review before the FHWA, seeking rescission of the out-of-service order. On February 22, 1996, the FHWA conditionally rescinded the out-of-service order, premised on a written statement by Justin's Chief Operations Manager attesting that the company had eliminated the imminent hazards cited in the out-of-service order and based on Justin's pledge to comply with the terms of an appropriate consent order.

Justin and the FHWA executed a consent order on March 1, 1996. Like the Aulenback consent order, the Justin consent order required the company to comply with federal safety regulations, and to institute policies to remedy the violations cited in the out-of-service order. It also provided that any future violation of federal safety regulations

---

1. Also on February 9, 1996, Aulenback and TUFS filed a petition in this court for review of the out-of-service order, along with a motion for a stay pending review. This court denied the motion for a stay on February 29, 1996.

2. Also on February 17, 1996, Justin and TUFS filed a petition in this court for review of the out-of-service order and a motion for a stay pending review. The court denied the motion for a stay on February 22, 1996.

or of the terms of the consent order would result in reinstitution of the out-of-service order, and additional civil penalties, including fines of up to $10,000 per day. Unlike the Aulenback consent order, the Justin order did not contain a provision stating that the company had waived its right to further review.

Justin and TUFS continued to pursue an administrative remedy. They filed an amended petition for review before the FHWA on March 22, 1996, seeking unconditional rescission of the out-of-service order, and asking the agency to terminate its "practice" of issuing such orders in the absence of a condition likely to cause serious injury or death. On April 15, 1996, the same day that the Aulenback final order was issued, the Associate Administrator issued a final order denying Justin's petition. The administrator noted that the out-of-service order was no longer in effect, and stated that Justin had provided no basis for reviewing or overturning the consent order. Again, he declined to address the request for termination of the agency's practice of issuing out-of-service orders in the absence of a condition likely to cause serious injury or death, finding that Justin and TUFS had not established the existence of such a practice. Justin and TUFS thereafter filed a petition for review of the final order in this court.

## II.

The consolidated petitions[3] present two distinct sets of issues. First, petitioners contend that the FHWA lacked authority to issue the out-of-service orders because they were not premised upon a finding of an imminent hazard to public safety as required under 49 U.S.C. § 521(b)(5). They seek a declaratory judgment that the orders were void from the time they were issued. Second, petitioners contend that the FHWA has established an illegal policy of issuing such orders on the basis of inadequate findings, relying on secret rules in an internal manual that is not generally available to the public. They maintain that these rules are inconsistent with the statutory requirement in § 521(b)(5) that out-of-service orders be

3. Order of May 16, 1996.

linked to an imminent hazard, and further, that they are invalid because they were issued without notice and opportunity for comment as required by the APA. See 5 U.S.C. § 553. Petitioners request that the FHWA be enjoined from issuing out-of-service orders based on these procedures.

### A.

Although there is no "precise test of universal application" for determining whether a party's request for declaratory relief has become moot, *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975), the basic question under Article III of the Constitution is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). The general rule, however, is that complete settlement moots an action. *See, e.g., Gould v. Control Laser Corp.,* 866 F.2d 1391, 1392 (Fed.Cir.1989); 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3433.2, at 233. Because the consent agreements entered into by Aulenback and Justin with the FHWA effectively settle the controversy relating to the issuance of the out-of-service orders, we conclude that the challenges to those orders are moot.

Two factors in particular support this conclusion. First, the authority of the Secretary to order a carrier out of service under § 521(b)(5) is narrowly circumscribed. The Secretary must issue an out-of-service order upon finding that a carrier poses an imminent hazard to safety, and such orders may not be any broader than necessary to abate the hazard. 49 U.S.C. § 521(b)(5)(A). Implicit in that restriction is a requirement that the Secretary may not order a carrier out of service unless its violations pose an imminent hazard, and must allow a carrier to return to service once the hazard has been abated.

Having made a finding of an imminent hazard, the Secretary had no authority to rescind the out-of-service order without finding that the hazard had been abated, and the FHWA's decision to rescind the orders must be presumed to rest on such a finding. Thus, as evidenced by the FHWA's entry into the consent agreements with Aulenback and Justin, the specific conditions that gave rise to the out-of-service orders no longer exist.

■ Second, absent a new finding of conditions that amount to an imminent hazard, the FHWA may order Aulenback and Justin out of service only upon a finding that they have violated the terms of the consent agreements. Hence, these cases do not involve the mere "voluntary cessation of allegedly illegal activity" by the FHWA, *United States v. W.T. Grant*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), but rather negotiated settlements by the parties.[4] If the FHWA finds a violation of the consent agreements and reinstates the out-of-service orders, Aulenback and Justin may be able to argue that the agency has overstepped its authority by shutting them down in the absence of an imminent hazard.[5] But since the carriers have remedied their past violations, the court can only speculate as to what future violations of the consent agreements the agency might deem sufficient to warrant reinstatement of the out-of-service orders. *See Preiser*, 422 U.S. at 403, 95 S.Ct. at 2335. Under Article III a court is prohibited from rendering any judgments unless they "resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts.'" *Id.* at 401, 95 S.Ct. at 2334 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

In other words, as a result of the consent agreements, Aulenback and Justin are currently in a position that is practically no different from any other motor carrier that is in compliance with federal safety regulations. They may be shut down in the future on the basis of as-yet undetermined violations, but no such danger exists so long as they remain in compliance.[6] Under these circumstances, declaratory relief from this court would be of little effect. Aulenback and Justin are required by law to comply with federal safety regulations, and so long as they do, they face no risk that the out-of-service orders will be reinstated. Their only complaint is that the violations set forth in those orders did not constitute an imminent hazard to public safety and were insufficient as a matter of law to shut them down. Having entered consent agreements to remedy all cited violations of the regulations, however, they face no "cognizable danger of recurrent violation" by the agency in the form of another allegedly unwarranted shutdown. *Chamber of Commerce v. Department of Energy*, 627 F.2d 289, 292 (D.C.Cir.1980) (per curiam). The conduct that gave rise to the agency action has come to an end, and if there should come a time when the agency determines that Aulenback or Justin have violated the consent agreements and the out-of-service orders are reinstated, "there will be ample opportunity for [them] to renew their complaint." *Id.* In so proceeding, the court does not presume the agency's response, but rather affords to it the first opportunity to

---

4. This fact distinguishes the instant appeals from *Reeve Aleutian Airways, Inc. v. United States*, 889 F.2d 1139 (D.C.Cir.1989). Also, although the court did invoke the analysis of *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), in *Douglas v. Donovan*, 704 F.2d 1276, 1278–79 (D.C.Cir. 1983), holding that a settlement agreement between a former husband and wife mooted the Labor Department's challenge to orders requiring it to garnish part of the husband's disability benefits to meet child support and alimony obligations he owed, that case is distinguishable since the Labor Department was not a party to the settlement agreement.

5. In light of our disposition, we need not decide whether Aulenback or Justin waived its right to judicial review.

6. To the extent that Aulenback and Justin seek to challenge the agency's authority to order them out-of-service under the consent order on the basis of some future violation, their claim is not ripe for review, since the conditions that might result in reinstatement have yet to occur. *See Media Access Project v. FCC*, 883 F.2d 1063, 1071 (D.C.Cir.1989).

determine the appropriate remedy for any violations of the consent orders and the federal regulations.

■ Hence, the only remaining question is whether any exception to the general rule that settlement moots a controversy, *see ITT Rayonier Inc. v. United States,* 651 F.2d 343, 345 (5th Cir.1981), applies here. One exception involves circumstances "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." *Id.* (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 393, 101 S.Ct. 1830, 1832–33, 68 L.Ed.2d 175 (1981)). The possibility that the FHWA may reinstate the out-of-service orders might suggest that the consent agreement did not resolve all of the issues between the parties. The possibility of reinstatement on the basis of an as-yet-undetermined violation of the consent agreement is too speculative to overcome mootness, however. *Cf. id.* at 345. In addition, Aulenback and Justin agreed that the out-of-service orders would only be conditionally rescinded, and thus the mere fact that the orders could be reimposed also does not suffice to create a live controversy. Although Aulenback and Justin maintain that they continue to suffer the effects of the out-of-service orders, Aulenback by losing customers and Justin by having to halt operations as a result of the increased cost of insurance, any continued injury to their reputations derives largely from the FHWA's charges of misconduct, which they have acknowledged by acceding to the consent agreements. *See Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1019 (D.C.Cir.1991), *cert. denied,* 503 U.S. 950, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992). The carriers offer no reason why, if the rescission of the out-of-service orders and the entry of consent agreements did not bring back their customers, a declaratory judgment would be likely to do so. *Id.*

Nor do the instant petitions fall into the exception for the narrow category of cases that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). There is nothing in the nature of the out-of-service orders that would preclude review; § 521(b)(8) provides that a party can challenge the order administratively and then seek judicial review. If the FHWA issues new out-of-service orders against Aulenback and Justin, they will again have a full opportunity to litigate them. *See Gulf Oil Corp. v. Brock,* 778 F.2d 834, 839 (D.C.Cir.1985). These petitions also do not fall within the exception for the category of cases that escape mootness because of a unilateral alteration in one party's conduct. *See, e.g. County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *see also ITT Rayonier,* 651 F.2d at 346. Finally, there are no allegations of fraud, and although they raised a claim of duress before the agency, petitioners make no such claim before the court.[7]

By entering into the consent agreements Aulenback and Justin settled their disagreements with the FHWA regarding the initial issuance of the out-of-service orders, and the FHWA can only reinstate the orders if it finds, in accordance with § 521, that Aulenback and Justin have engaged in another act of wrongdoing, namely violation of the terms of the consent agreements. Reinstatement of the out-of-service orders would represent the creation of a new controversy between the parties. Accordingly, we hold that no controversy regarding the initial issuance of the out-of-service orders currently exists and the petitions seeking to challenge those orders are moot.

**B.**

Petitioners also contend that the FHWA has established a set of illegal criteria for determining whether a carrier should be ordered out of service. They maintain first, that the FHWA has adopted a substantive

---

7. Hence, the court has no occasion to consider whether such a claim would fail on the ground that economic pressure is rarely considered sufficient to create duress, at least when the other party to the agreement is not directly the source of the economic pressure. *See, e.g., Matter of* *Kingsley,* 802 F.2d 571, 578–79 (1st Cir.1986); *Asberry v. U.S. Postal Serv.,* 692 F.2d 1378, 1381 (Fed.Cir.1982); *Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 959,* 611 F.2d 1286, 1289 (9th Cir.1980).

rule concerning the issuance of out-of-service orders that appears in internal manuals issued in 1991 and 1995 that were not distributed to the general public.[8] Our focus is on the 1995 Department of Transportation Motor Carrier Administrative Training Manual ("Manual"), which has superseded the 1991 manual, according to the FHWA. Petitioners contend that the procedures in the Manual, which is used to train FHWA investigative staff, are inconsistent with the requirements of 49 U.S.C. § 521(b)(5). Second, petitioners maintain that the provisions of the Manual should have been subject to public notice and comment as provided by the APA, 5 U.S.C. § 553.[9] They seek an injunction barring the FHWA from issuing future out-of-service orders on the basis of the procedures in the Manual.

■ Our conclusion that petitioners' challenges to the out-of-services orders are moot does not dispose of these issues. As the court noted in an analogous context, "[i]t is well established that if a plaintiff challenges both a specific agency action and the policy that underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *City of Houston v. Department of Housing and Urban Development*, 24 F.3d 1421, 1428 (D.C.Cir.1994). If petitioners have standing to challenge the policy and its failure to be noticed for comment, and the issues are ripe for judicial review, the court may grant declaratory or injunctive relief. *Id.* at 1430.

■ **Jurisdiction.** Before turning to standing and ripeness, however, the court must first determine that it has subject matter jurisdiction over petitioners' challenge to the procedures in the Manual. Although 49 U.S.C. § 521(b)(8) provides a basis for challenges to a final order issued pursuant to

§ 521(b)(5), petitioners do not contend that the Manual constitutes a final order by the FHWA. Petitioners instead maintain that the court has jurisdiction under the Hobbs Act, 28 U.S.C. § 2342(5), and we agree. As amended in 1995, § 2342(5) provides, in relevant part, that the courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of the Surface Transportation Board made reviewable by [28 U.S.C. § 2321]." Section 2321 makes any "proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board" reviewable under § 2342(5), except as otherwise provided by an Act of Congress. 28 U.S.C. § 2342(5).

When Congress created the Department of Transportation in 1966, it transferred authority to it from several different agencies, including the Interstate Commerce Commission ("ICC"). Department of Transportation Act, Pub.L. 89–670, § 6, 80 Stat. 937 (1966). Among the functions transferred was the ICC's "duty . . . [t]o regulate . . . qualifications and maximum hours of service of employees, and safety of operation and equipment" with respect to motor carriers. 49 U.S.C. § 304(a)(1) (1976) current version at 49 U.S.C. § 31502(b)(1). *See also* Pub.L. 89–670, § 6(e)(6)(C). Congress provided that actions taken pursuant to this transferred authority would be subject to judicial review as though the transfer had never occurred. The current version of the review provision, codified at 49 U.S.C. § 351(a), provides, in relevant part, that:

An action of the Secretary of Transportation in carrying out a duty or power transferred under the Department of Transportation Act . . . may be reviewed judicially

---

8. The FHWA states that the manuals are available for public inspection and copying pursuant to 5 U.S.C. § 552(a)(2)(C), which provides that "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying—. . . administrative staff manuals and instructions to staff that affect a member of the public."

9. TUFS also relies on the Freedom of Information Act, 5 U.S.C. § 552. The relevant portion of

that section requires agencies to publish all "substantive rules of general applicability" in the Federal Register, and provides that a person may not be adversely affected by any matter required to be published in the Federal Register and not so published, except to the extent that the person receives actual and timely notice. *Id.* Our conclusion that the manual sets forth procedural rules, rather than substantive rules, disposes of this contention as well.

to the same extent and in the same way as if the action had been an action by the department, agency, or instrumentality of the United States Government carrying out the duty or power immediately before the transfer or assignment.

From 1975 until 1995, the Hobbs Act gave the courts of appeals exclusive jurisdiction over challenges to ICC "rules, regulations, or final orders" made reviewable by 28 U.S.C. §§ 2321 and 2342(5). Consequently, this court held that § 2342(5) vested the courts of appeals with exclusive jurisdiction to review FHWA regulations issued pursuant to authority transferred to the Secretary of Transportation from the ICC. *Center for Auto Safety v. Skinner,* 936 F.2d 1315 (D.C.Cir.1991).

In 1995, Congress abolished the ICC. *See* ICC Termination Act, Pub.L. 104–88, § 101, 109 Stat. 804 (1995). Except where Congress directed otherwise, all of the ICC's remaining functions were transferred to the Surface Transportation Board ("STB"), an agency within the Department of Transportation. 49 U.S.C.A. § 702 (West Supp.1996). That raises the question of whether an action of the Secretary of Transportation pursuant to the transferred authority can still be reviewed by this court under § 2342(5), since, by its terms, § 2342(5) now applies to actions of the STB, rather than the ICC. We conclude, absent indication that Congress intended a contrary result, that the abolition of the ICC did not alter the manner of judicial review for actions of the Secretary of Transportation in carrying out the powers or duties transferred from the ICC in 1966, and hold, therefore, that such actions are reviewable under § 2342(5) to the same extent and in the same manner as actions of the STB.

■ The remaining jurisdictional question is whether in issuing the Manual and relying on its procedures, the Secretary is carrying out a power or duty transferred from the ICC in 1966. In *Owner–Operator Independent Drivers Ass'n, Inc. v. Pena,* 996 F.2d 338 (D.C.Cir.1993), the court held that the Secretary's authority to make grants to the states under the Omnibus Transportation

Employee Testing Act of 1991 was not a power or duty involving a transferred function, and that a challenge to the Secretary's exercise of that authority was not reviewable under § 2342(5). *Id.* at 340–42. Subsequently, the court declined to express views on whether an action of the Secretary in promulgating regulations under the Commercial Motor Vehicle Safety Act of 1986 involved a transferred power or duty. *International Bhd. of Teamsters v. Pena,* 17 F.3d 1478, 1482 n. 1 (D.C.Cir.1994). The court noted that although the ICC had never exercised any authority under the Commercial Motor Vehicle Safety Act because it was not enacted until after the 1966 transfer, "one could argue that the FHWA is performing a transferred 'function' whenever it regulates motor carrier safety, even if the only authority actually invoked derives from a post-transfer statute." *Id.* at 1482 n. 1.

The Secretary's authority to order motor carriers out of service was not transferred from the ICC, but instead originates in 49 U.S.C. § 521(b)(5), which was enacted as part of the Motor Carrier Safety Act of 1984, Pub.L. 98–554, 98 Stat. 2842 (1984). Nonetheless, the Secretary's power to promulgate rules governing the issuance of out-of-service orders derives in part from the authority to "prescribe requirements for ... qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier," 49 U.S.C. § 31502(b)(1), a power that derives from the 1966 transfer.[10] Under *Center for Auto Safety,* 936 F.2d at 1315–16, actions taken by the Secretary pursuant to authority transferred from the ICC are subject to judicial review under the Hobbs Act. We therefore hold, consistent with our decision in *Teamsters,* 17 F.3d at 1478, that the courts of appeal have jurisdiction over proceedings to enjoin or suspend a rule defining the procedures by which the Secretary exercises authority under § 521(b)(5).

**Standing and ripeness.** As to the issues of standing and ripeness, TUFS has not asserted any injury to its organizational interests as a result of the FHWA's alleged

---

**10.** Section 31502 was originally enacted by Pub.L. 97–449, 96 Stat. 2438 (1983), which reco-

dified prior law without substantive change. *Id.* § 6(a), 96 Stat. 2443 (1983).

policy. *See, e.g. Havens Realty Corp. v. Coleman,* 455 U.S. 363, 370–79, 102 S.Ct. 1114, 1119–25, 71 L.Ed.2d 214 (1982). Nonetheless, as a trade organization representing truckers, it has standing to challenge the policy on behalf of its members, including Aulenback and Justin. *See, e.g. Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 341–45, 97 S.Ct. 2434, 2440–42, 53 L.Ed.2d 383 (1977). Nevertheless, we conclude that the challenge to the content of the Manual is unripe inasmuch as it does not involve purely legal issues pertaining to settled agency policy. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967); *Better Government Ass'n. v. Department of State,* 780 F.2d 86, 92–93 (D.C.Cir.1986).

On the merits, petitioners contend that the Manual creates a category of "unfit motor carriers," which the FHWA automatically deems to be imminent hazards to safety, and requires any motor carrier that is the subject of three enforcement actions within a three-year period to be designated as unfit. In particular, they point to the Manual's definition of an "unfit" motor carrier:

> An unfit motor carrier poses an imminent hazard to public safety. Unfit motor carriers include those that do not have adequate safety management controls in place to ensure compliance with applicable safety requirements, that continue in a less than satisfactory state of compliance, and which fail to respond to the FHWA selective compliance and enforcement contacts. This includes motor carriers conducting hazardous material operations or passenger operations which have received unsatisfactory safety ratings, or have been the subject of a third enforcement action under the unfit carrier threshold in 2(b) below.

Paragraph 2(b) provides that a Regional Director of the FHWA may declare a motor carrier unfit when the following "threshold conditions" are met:

> Generally a motor carrier is an unfit carrier and poses an imminent hazard to the motoring public when it meets the following threshold conditions:

(1) The carrier must have been the subject of two (2) prior enforcement actions within the past 36 months.

(2) The two prior enforcement actions based upon non-recordkeeping violations (or falsification and destruction of records) would be acceptable.

(3) Third enforcement action warranted— A third enforcement action (prepared within twelve (12) months of settlement of final agency action of the second case) must contain violations in one or more of the critical areas listed above, the evidence must clearly document the violations, and the recommended enforcement action must be approved by region prior to issuance of the Out-of-Service Order.

The "critical areas" referred to in Paragraph 2(b)(3) are listed in Paragraph 1(g) as conditions "[l]ikely to Result in Serious Injury or Death," and include wilful disregard for safety that has resulted in fatal or serious accidents, and unsafe conditions of vehicles and drivers "that would result in Out-of-Service Orders if discovered on the highway." Petitioners contend that the provisions in the Manual demonstrate that, as a matter of policy, the FHWA routinely issues out-of-service orders to carriers based on their past history of non-compliance, without regard to whether their operations meet the criteria established in 49 U.S.C. § 521(b)(5) and are likely to result in serious injury or death if not discontinued immediately.

 Where injunctive or declaratory relief is sought, the doctrine of ripeness serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories,* 387 U.S. at 148–49, 87 S.Ct. at 1515. The test for determining whether a challenge to agency action is ripe is twofold, requiring the courts to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. A case

is ripe if "the interests of the court and agency in postponing review until the question arises in some more concrete and final form [are] outweighed by the interest of those who seek relief from the challenged action's immediate and practical impact upon them." *Continental Air Lines, Inc. v. Civil Aeronautics Bd.,* 522 F.2d 107, 125 (D.C.Cir. 1975) (in banc) (internal quotation marks omitted).

■ Under the first prong of *Abbott Laboratories,* the court examines "the fitness of the issues for judicial decision." 387 U.S. at 149, 87 S.Ct. at 1515. Even where the issue presented is a purely legal one and presumptively fit for review, *Eagle–Picher Indus., Inc. v. United States E.P.A.,* 759 F.2d 905, 915 (D.C.Cir.1985), the Supreme Court has observed that such an issue may be deemed unfit for review, *Toilet Goods Ass'n, Inc. v. Gardner,* 387 U.S. 158, 163–64, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967), if, for example, "further administrative action is needed to clarify the agency's position." *Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler,* 789 F.2d 931, 940 (D.C.Cir. 1986). The difficulty in addressing the challenge to the contents of the Manual is that, contrary to petitioners' assertion, the FHWA denies that it has a policy of placing carriers out of service on the basis of three enforcement actions within 36 months. Indeed, the FHWA denies having a *per se* rule and asserts that its consideration of enforcement actions is only one of several factors used in determining whether continued operation would pose an imminent hazard. Further, assuming the FHWA has such a policy, petitioners fail to show on the record before the court that it has purported to take enforcement action based on the Manual's definition of imminent hazard. Moreover, petitioners did not ask the FHWA for its interpretation of the Manual; petitioners did not even obtain the Manual until after they filed their petitions for review in this court. Hence, the agency has not had an opportunity to explain, in an authoritative way, the purpose of the Manual and how it is used. The court thus lacks an authoritative interpretation of the relevant provisions of that text, and petitioners fail to demonstrate that the court should consider their challenge in a factual vacuum.

As our previous discussion makes clear, petitioners correctly point out that under § 521(b)(5) the FHWA cannot issue an out-of-service order based solely on the fact that a motor carrier has been subjected to three enforcement actions within a three-year period, without identifying an existing violation of federal safety rules that is likely to result in death or serious injury if not discontinued immediately. The Manual's definition depends on the presence of such a hazard. Manual at ¶ 3(F). Yet the Manual also provides that the Regional Director may declare a motor vehicle unfit when the carrier meets threshold conditions, Manual ¶ 2(b), quoted *supra,* that appear to have no connection to the statutory requirement of likelihood "to result in serious injury or death if not discontinued immediately." In interpreting analogous provisions of § 521(b)(2), the court recently noted that Congress drew a distinction between recordkeeping violations, substantial health and safety violations, and violations likely to result in serious personal injury or death. *Used Equipment Sales, Inc. v. Department of Transportation,* 54 F.3d 862, 864 (D.C.Cir.1995). Assuming that the same distinctions are relevant to determining whether a violation constitutes an imminent hazard under § 521(b)(5), the Manual appears on its face to permit issuance of an out-of-service order on the basis of violations that do not amount to an imminent hazard. Yet, in an authoritative interpretation or factual context the FHWA might decline to follow the language of its Manual or might sufficiently narrow it that under a deferential standard of review, similar to that applied in reviewing an agency's interpretation of its own regulations, *see Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616, *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965), the court might be able to uphold it. Therefore, until this question is in a "more concrete and final form," *Eagle–Picher,* 759 F.2d at 915, we conclude that the question is unfit for judicial review.

■ Under the second prong of *Abbott Laboratories,* dictating that in determining ripeness of a claim the court must consider whether the "hardship to the parties of with-

holding court consideration" outweighs the institutional interest in deferral of the dispute, 387 U.S. at 149, 87 S.Ct. at 1515, we find nothing to indicate that petitioners face any "direct and immediate" sanctions under the terms of the Manual. *Natural Resources Defense Council, Inc. v. EPA,* 859 F.2d 156, 166 (D.C.Cir.1988). A hardship may be shown when a litigant is forced to choose between risking serious sanctions and incurring substantial costs of complying with an allegedly unlawful agency directive. *Id.* at 166 (citing *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517). Petitioners face no such costs of compliance; at most the challenged text provides that carriers can be put out of business for repeated safety violations. Petitioners do not argue, nor could they, that they would be committing safety violations but for the challenged policy. In addition, they can at most only speculate as to what future harm, if any, will be imposed by the criteria in the Manual, and this is insufficient to satisfy the hardship prong. *Id.* Finally, there is nothing to suggest institutional concern favors early review. *Id.* at 166–67 (citing *Eagle–Picher,* 759 F.2d at 916). Therefore, because further factual development by the FHWA is required, we hold that petitioners' challenge to the content of the Manual is unripe.

■ **APA notice and comment.** Finally, petitioners contend that, assuming the Manual is consistent with the statute, the FHWA was not entitled to issue the Manual without publishing a general notice of proposed rulemaking in the Federal Register and giving interested persons an opportunity to comment, in accordance with the APA, 5 U.S.C. § 553. While this contention is ripe, because we assume a construction of the contents of the Manual that does not make any substantive change in the statutory definition of imminent hazard, we conclude that it is unpersuasive. Although the APA generally prohibits an agency from issuing a rule without public notice and an opportunity for comment, not every rule is subject to these re-

quirements.[11] The exception that is relevant here applies to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(3)(A). The FHWA maintains that the "rules" contained in the Manual could be described as falling into any of these three categories. We conclude that, if the guidelines in the Manual do not impermissibly alter statutory definition of an "imminent hazard," they are merely rules of agency procedure and practice, and that the FHWA was, therefore, not required to provide notice and an opportunity for public comment before issuing the Manual to its staff.

■ The primary purpose of the procedural rules exemption in § 553 is "to ensure 'that agencies retain latitude in organizing their internal operations.'" *American Hospital Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C.Cir.1987) (quoting *Batterton v. Marshall,* 648 F.2d 694, 707 (D.C.Cir.1980)). In *American Hospital Association,* the court recognized that "enforcement plans developed by agencies to direct their enforcement activity warrant considerable deference" and are typically exempt from notice and comment requirements. *Id.* at 1050. Consequently, the court held that two manuals issued by the Department of Health and Human Services to govern the manner in which "peer review organizations" monitored the activities of Medicare providers were procedural rules exempt from § 553. *Id.* at 1049–51. Similarly, in *United States Department of Labor v. Kast Metals Corp.,* 744 F.2d 1145 (5th Cir.1984), the Fifth Circuit held that an agency rule used to target employers for routine health and safety inspections was an exempt procedural rule. *Id.* at 1151–56. That the FHWA's Manual gives Regional Directors "crisper and more detailed" guidance on the identification of carriers whose operations pose imminent hazards than that provided by 49 U.S.C. § 521(b)(5)(B) does not render the Manual's provisions subject to notice and comment requirements. *American Mining Congress v. Mine Safety &*

---

**11.** The APA defines a "rule," in relevant part, as: the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or pre-

scribe law or policy or describing the organization, procedure, or practice requirements of an agency....
5 U.S.C. § 551(4).

*Health Admin.*, 995 F.2d 1106, 1112 (D.C.Cir.1993). The court has recognized that agencies do not "develop written guidelines to aid their exercise of discretion only at the peril of having a court transmogrify those guidelines into binding norms" subject to notice and comment strictures. *Community Nutrition Inst. v. Young*, 818 F.2d 943, 949 (D.C.Cir.1987) (per curiam).

The guidelines in the Manual fit comfortably within the analytical framework of *American Hospital Association* and *Kast Metals*. They do not impose new substantive burdens, in the sense that they either require or prohibit any particular actions on the part of motor carriers. Carriers are obliged to comply with all valid and applicable federal safety rules, regardless of whether the FHWA has authority to suspend their operations for non-compliance. Nor does the Manual mandate that the FHWA take action upon making certain findings. The Manual simply provides guidance for FHWA administrators seeking to identify motor carrier operations that pose a potential danger to public safety. We hold, therefore, that the Manual's guidelines are procedural rules that are exempt from the APA's notice and comment requirements, 5 U.S.C. § 553.

Accordingly, we dismiss as moot the petitions seeking a declaration that the out-of-service orders were void *ab initio*; we dismiss the petitions challenging the content to the Manual as unripe; we deny the facial APA challenge to the Manual; and, consequently, we deny the petitions to enjoin the FHWA from issuing out-of-service orders according to the procedures described in the Manual.