139 F.3d 934

**TRUCKERS UNITED FOR SAFETY, Petitioner,**

v.

**FEDERAL HIGHWAY ADMINISTRATION, Respondent.**

No. 97–1382.

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1998.

Decided April 3, 1998.

---

**10.** The government does not contest the availability of an advice of counsel defense for charges of criminal contempt. The district court assumed that the defense was available in making its findings and we presently have no need to address the issue.

Anthony J. McMahon, Washington, DC, argued the cause and filed the briefs for petitioner.

Sandra Wien Simon, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for respondent, with whom Frank W. Hunger, Assistant Attorney General, and Robert S. Greenspan, Attorney, Washington, DC, were on the brief.

Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.

ROGERS, Circuit Judge:

Truckers United for Safety ("TUFS"), a nonprofit trade association of motor carriers, petitions for review of a portion of the regulatory guidance issued by the Federal Highway Administration (the "Administration") for private parties seeking to comply with motor carrier safety regulations. In a set of three questions and answers published in this guidance, TUFS contends, the Administration imposed strict liability on trucking companies for certain regulatory violations committed by their employees and, in doing so, exceeded its statutory authority and violated the companies' due process rights. Because these substantive challenges are not ripe for review, we dismiss the petition as to these challenges. TUFS also contends that the Administration should have afforded interested parties notice and an opportunity to comment under the Administrative Procedure Act ("APA"). Because the questions and answers were interpretative rules not subject

to notice-and-comment requirements, we deny the petition for review as to this challenge.

## I.

Under the Motor Carrier Act of 1935 and the Motor Carrier Safety Act of 1984, the Federal Highway Administration has the authority to issue regulations pertaining to commercial motor vehicle safety and to enforce those regulations. *See* 49 U.S.C. §§ 521(b), 31133(a) (1994). Pursuant to that authority, the Administration promulgated the Federal Motor Carrier Safety Regulations, including the following regulations:

§ 390.11 Motor carrier to require observance of driver regulations.

Whenever ... a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such

duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound.

§ 395.3 Maximum driving time.

(a) Except as provided [elsewhere] ... no motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive:

(1) More than 10 hours following 8 consecutive hours off duty; or

(2) For any period after having been on duty 15 hours following 8 consecutive hours off duty.

(b) No motor carrier shall permit or require a driver of a commercial motor vehicle to drive, nor shall any driver drive, regardless of the number of motor carriers using the driver's services, for any period after—

(1) Having been on duty 60 hours in any 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or

(2) Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

§ 395.8 Driver's record of duty status.

(a) Except for a private motor carrier of passengers (nonbusiness), every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24 hour period using the methods prescribed [herein]. . . .

. . .

(e) Failure to complete the record of duty activities of this section or § 395.15, failure to preserve a record of such duty activities, or making of false reports in connection with such duty activities shall make the driver and/or the carrier liable to prosecution.

. . .

49 C.F.R. §§ 390.11, 395.3, .8 (1997).

The Administration has developed and periodically updated regulatory guidance in question-and-answer format to assist parties bound by these regulations. *See* Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 Fed.Reg. 16370 (1997) [hereinafter Regulatory Guidance]. In the most recent edition of this regulatory guidance, published in the Federal Register on April 4, 1997, the Administration "consolidated previously issued interpretations and regulatory guidance materials and developed concise interpretive guidance in question and answer form." *Id.* at 16370. Three particular questions and answers within the guidance are of concern here. First and second, in interpretation of 49 C.F.R. § 395.3:

Question 7: What is the liability of a motor carrier for hours of service violations?

Guidance: The carrier is liable for violations of the hours of service regulations if it had or should have had the means by which to detect the violations. Liability under the [Federal Motor Carrier Safety Regulations] does not depend upon actual knowledge of the violations.

Question 8: Are carriers liable for the actions of their employees even though the carrier contends that it did not require or permit the violations to occur?

Guidance: Yes. Carriers are liable for the actions of their employees. Neither intent to commit, nor actual knowledge of, a violation is a necessary element of that liabili-

ty. Carriers "permit" violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations.

*Id.* at 16424. Third, in interpretation of 49 C.F.R. § 395.8:

Question 21: What is the carrier's liability when its drivers falsify records of duty status?

Guidance: A carrier is liable both for the actions of its drivers in submitting false documents and for its own actions in accepting false documents. Motor carriers have a duty to require drivers to observe the [Federal Motor Carrier Safety Regulations].

*Id.* at 16426. TUFS petitions for review of these three questions and answers.

## II.

■ TUFS contends that, by enacting a strict liability standard for motor carriers, the agency exceeded its statutory authority and violated due process and thus that the offending questions and answers should be vacated. The Administration denies that the questions and answers changed the standards for motor carriers' liability and insists that, until it has had a chance to apply the regulatory guidance in a concrete factual setting, this petition is not ripe for review. The agency is correct: under the test for ripeness announced in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the issues are not yet fit for judicial decision and TUFS will not suffer any great hardship from waiting for judicial review in a more appropriate action. *See id.* at 149, 87 S.Ct. at 1515–16.

Our determination of the fitness prong of the *Abbott Laboratories* test is guided by *Aulenback, Inc. v. Federal Highway Administration*, 103 F.3d 156 (D.C.Cir.1997). In *Aulenback,* a group of petitioners (including TUFS) challenged the Administration's reliance upon an internal guidance manual for determining whether certain motor carrier practices posed an "imminent hazard" justifying orders to put motor carriers out of service under 49 U.S.C. § 521(b)(5)(A). *See Aulenback,* 103 F.3d at 159–61. The court held that this challenge was not ripe for review because the agency had not had a chance to clarify its position:

the agency has not had an opportunity to explain, in an authoritative way, the purpose of the Manual and how it is used. The court thus lacks an authoritative interpretation of the relevant provisions of that text, and petitioners fail to demonstrate that the court should consider their challenge in a factual vacuum.

*Id.* at 167. Indeed, the court continued, even though the challenged agency guidance appeared on its face to allow out-of-service orders when the statute in question would not so allow, "the [agency] might decline to follow the language of its Manual or might sufficiently narrow it that under a deferential standard of review … , the court might be able to uphold it." *Id.* Thus, the court concluded, the challenge was unfit for judicial review. *See id.*

The substantive challenges in the instant petition are even less fit for judicial review than the challenge in *Aulenback.* TUFS claims that the three questions and answers clearly demonstrate the imposition of strict liability on motor carriers for their drivers' violations of maximum hours and record keeping regulations. The Administration, on the other hand, denies that the questions do any such thing; instead, the agency insists, the regulatory guidance only represents an attempt to codify already existing law, which, all agree, did not impose such strict liability on motor carriers for their drivers' actions. Indeed, the questions and answers do not seem to impose strict liability on motor carriers;[1] certainly, they do not do so with the

---

1. The answer for question 7 states that a carrier is liable only for violations "if it *had or should have had* the means by which to detect the violations"—this implies not strict liability, but negligence. Regulatory Guidance, 62 Fed.Reg. at 16424 (emphasis added). The answer for question 8 does state that "[c]arriers are liable for the actions of their employees," but continues: "Carriers 'permit' violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations." *Id.* Again, this seems to envision imposing liability only upon motor carriers that are at fault in at least some way.

clarity necessary for the court to intercede without first giving the agency a chance to apply its regulations in a concrete factual situation. *See id.* at 167. At this point, TUFS can only speculate that the regulatory guidance will be applied in the way they fear.

■ Furthermore, TUFS does not contend that it will suffer any great hardship from waiting for judicial review in a more appropriate action, nor does it introduce any evidence to that effect.[2] Although "[a] hardship may be shown when a litigant is forced to choose between risking serious sanctions and incurring substantial costs of complying with an allegedly unlawful agency directive," *id.* at 168, TUFS is not faced with that choice. TUFS maintains that the regulatory guidance replaces negligence with strict liability (that is, liability without fault). Even if this is true, TUFS makes no claim that motor carriers will change their behavior in any significant way in order to account for the employee violations for which they would be liable under strict liability but not negligence.[3] To the extent that the motor carriers' liability is expanded under the questions and answers, they will be able to address any resulting harm in any adjudication in which the agency relies upon the regulatory guidance to impose strict liability.[4]

Thus, neither prong of the ripeness inquiry supports TUFS' petition for review. To the extent that TUFS wishes to challenge the substance of the regulatory guidance, it must wait until the Administration actually applies it in a concrete factual situation; indeed, when and if the Administration does so, TUFS may find such application unobjectionable. Accordingly, we dismiss the petition for review as to TUFS' arguments that, in promulgating the regulatory guidance, the Administration has exceeded its statutory authority and violated the Fifth Amendment.

## III.

■ TUFS' further contention, that the set of three questions and answers in the regulatory guidance is invalid because the Administration did not provide interested parties with notice and an opportunity to comment in accordance with the APA, is similarly unpersuasive. *See* 5 U.S.C. §§ 553, 706(2)(A) (1994). Under the APA, legislative rules are subject to notice-and-comment requirements, whereas interpretative rules are not. *See id.* § 553(b); *American Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108–12 (D.C.Cir.1993). To distinguish between the two, the court asks

> whether the purported interpretive rule has 'legal effect', which in turn is best ascertained by asking (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer

---

Finally, although the answer for question 21 states that "[a] carrier is liable ... for the actions of its drivers in submitting false documents," it does not state that carriers will be *strictly* liable therefor. *Id.* at 16426. Rather, it suggests that carriers will face liability only if they fail to fulfill their "duty to require drivers to observe the [regulations]." *Id.* The standard of liability thus seems to be one for negligence in allowing or failing to detect drivers' submissions of false documents.

2. TUFS instead relies on its contention that the petition raises purely legal issues fit for judicial resolution. It observes that if the court determined that the issues presented by the case were fit for review, "there is no need to consider 'the hardship to the parties of withholding court consideration.' " *Action for Children's Television v. FCC*, 59 F.3d 1249, 1258 (D.C.Cir.1995) (quoting *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515–16). However, because the fitness for review of TUFS petition is suspect, we must also consider the hardship issue.

3. Counsel for TUFS recognized as much at oral argument:

> The Court: [The Court is] asking a practical question whether the members of your association have in fact felt required to change their practices because of these three answers to these three questions.
> Counsel: They can't change, your honor. You cannot create perfection, and I suggest that the rule requires perfection.

4. In the addendum to its reply brief, TUFS includes documents from a recent prosecution of a motor carrier by the Administration in which, TUFS claims, the Administration has been applying a strict liability-based enforcement policy. Even assuming these documents are properly before the court, TUFS' remedy lies in a challenge in that proceeding or another of its kind, not in the kind of facial challenge presented in the instant case.

benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.

*Id.* at 1112. Although this inquiry may be "fuzzy" in some cases, *see American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1046 (D.C.Cir.1987), in the instant case, each of these criteria points toward the same conclusion: the three questions and answers represent interpretative rules not subject to the APA's notice and comment requirements.

First, as discussed, the three questions and answers do not appear to impose a new strict liability standard on motor carriers, and thus the Administration has no apparent need to rely upon them for authority to take any enforcement action. The regulations in force both before and after the Administration issued the regulatory guidance provided that motor carriers have a duty to require their drivers' compliance with the regulations, *see* 49 C.F.R. § 390.11, and in particular, with the maximum hours of duty and record keeping regulations with which the regulatory guidance in question is concerned, *see id.* §§ 395.3, .8. The regulatory guidance appears only to elaborate upon that duty, and then only in a manner consistent with earlier applications of the regulations. *See Used Equip. Sales v. Department of Transp.,* 54 F.3d 862, 866 (D.C.Cir.1995). Even if the regulatory guidance did not exist, the Administration could rely upon prior authority to apply the rules embodied in the three challenged questions and answers.

Second, the regulatory guidance is not published in the Code of Federal Regulations. It was published only in the Federal Register, and the Administration gave no indication there that it would publish the Regulatory Guidance again elsewhere. *See* Regulatory Guidance, 62 Fed.Reg. at 16370.

■ Third, the Administration did not invoke its legislative authority in publishing the regulatory guidance. To the contrary, the Administration explained that this was "interpretive guidance" meant to "provide the motor carrier industry with a clearer understanding of the applicability of many of the requirements contained in the [Federal Motor Carrier Safety Regulations] in particular situations." *Id.* Although the label an agency places on a rule is not dispositive, *see Action for Children's Television v. FCC,* 59 F.3d 1249, 1257 (D.C.Cir.1995), the label, as indicative of intent, does carry some weight in our consideration whether the underlying rule is legislative or interpretative.

Finally, the three questions and answers do not amend a prior legislative rule. As noted, they appear consistent with prior law. It is true that the preamble to the regulatory guidance states that "[a]ll prior interpretations and regulatory guidance ... issued previously in the Federal Register, as well as [Administration] memoranda and letters, may no longer be relied upon as authoritative insofar as they are inconsistent with the guidance published today." Regulatory Guidance, 62 Fed.Reg. at 16370. The preamble simply puts carriers on notice that older interpretive materials may now be outdated. This is consistent with the guidance's purpose of "consolidat[ing] previously issued interpretations and regulatory guidance materials." *Id.* No substantive change in prior law is apparent.

All four factors indicate that the Administration was not required to afford interested parties notice and an opportunity to comment before promulgating the three questions and answers (and, concomitantly, that the three questions and answers do not have the binding effect of legislative rules). Hence, TUFS' claim under the APA fails, and we deny the petition for review as to that claim.