170 F.3d 203
 Fed. Carr. Cas. P 84,090, 335 U.S.App.D.C. 166
 NATIONAL TANK TRUCK CARRIERS, INC., Petitioner,
v.
FEDERAL HIGHWAY ADMINISTRATION OF THE UNITED STATES
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 98-1248.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 2, 1999.
Decided March 26, 1999.
 
 On Petition for Review of an Order of the United States Department of Transportation
 Lawrence W. Bierlein argued the cause for the petitioner. Andrew P. Goldstein and Kathleen L. Mazure were on brief.
 Bruce G. Forrest, Attorney, United States Department of Justice, argued the cause for the respondent. Frank W. Hunger, Assistant Attorney General, and Michael Jay Singer, Attorney, United States Department of Justice, were on brief.
 Before: GINSBURG, HENDERSON and TATEL, Circuit Judges.
 Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 Petitioner National Tank Truck Carriers, Inc. (NTTC), a trade association of companies engaged in commercial trucking, seeks review of the changes to the North American Uniform Vehicle Out-of-Service Criteria (OOSC) issued by the Commercial Vehicle Safety Alliance (CVSA), a private, non-governmental organization consisting largely of state, local, federal and foreign government officials. See Advance Notice of Proposed Rulemaking, Out-of-Service Criteria, 63 Fed.Reg. 38,791, 38,793 (1998) [hereinafter ANPRM], Joint Appendix (JA) 143.[1] Because the OOSC are referenced in the regulations of respondent Federal Highway Administration (FHWA), which is the entity within the United States Department of Transportation (DOT) responsible for regulating the commercial trucking industry as to safety matters, see 49 C.F.R. § 390.5, NTTC contends that the OOSC constitute substantive rules of the FHWA. Moreover, NTTC asserts that the CVSA's April 1, 1998 amendments to the OOSC effected a change to federal regulations without the requisite notice and comment procedures of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq. NTTC also contends that the FHWA violated the Due Process Clause and the incorporation by reference regulations, 1 C.F.R. Part 51, implementing the APA and Federal Register Act, 44 U.S.C. §§ 1501 et seq., and improperly delegated its authority to the CVSA. For the reasons set forth below, we dismiss NTTC's petition for lack of jurisdiction.
 
 I.
 
 2
 In order to ensure public safety on the nation's highways, the Congress enacted the Motor Carrier Safety Act of 1984, Pub.L. No. 98-554, 98 Stat. 2829 (codified as amended at 49 U.S.C. §§ 31501 et seq.) (Act), which inter alia requires the Secretary of Transportation to "prescribe requirements for ... safety ... and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b); see also 49 U.S.C. § 31136(a)(1) (directing DOT to promulgate regulations to "ensure that ... commercial motor vehicles are maintained, equipped, loaded, and operated safely"). In particular, the Act directs the Secretary to "prescribe regulations on Government standards for inspection of commercial motor vehicles" on an "annual or more frequent" basis. 49 U.S.C. § 31142(b).
 
 
 3
 The FHWA has carried out this mandate by implementing a bifurcated vehicle inspection system based on annual "garage style" inspections and random roadside inspections. The FHWA promulgated the standards for the garage inspections in 1988 pursuant to the APA. They are codified under Appendix G to Subchapter B of the Federal Motor Carrier Safety Regulations (FMCSR). See 49 C.F.R. § 396.17; 49 C.F.R. Ch. III, Subch. B, App. G. The FMCSR also require agents to order vehicles "out of service" if, as a result of a roadside inspection, it is determined that their condition "would likely cause an accident or a breakdown." 49 C.F.R. § 396.9(c).
 
 
 4
 Nevertheless, the individual states are the primary enforcers of the highway safety regulations at roadside inspections. In return for their acceptance of MCSAP grants, the states "assume responsibility for enforcing the ... (FMCSR) ... including highway related portions of the Federal Hazardous Materials Regulations (FHMR) ... or compatible State rules." 49 C.F.R. § 350.9(a). To be compatible, a state rule must be "identical" to the FMCSR and FHMR or fall within applicable tolerance guidances. 49 C.F.R. § 350.3. Thus, "compatible" rules are rules that "hav[e] the same effect as the [FMCSR and FHMR]." Id.
 
 
 5
 The OOSC currently serve as a standard for roadside inspections by state inspectors. See ANPRM, 63 Fed.Reg. at 38,792, JA 142 ("All States participating in the Motor Carrier Safety Assistance Program (MCSAP) have agreed that their inspectors will use the [OOSC]...."). Specifically, state law enforcement agents use the OOSC to carry out their responsibilities under the FMCSR and to determine when a commercial vehicle should be placed out-of-service. When placed out-of-service, the vehicle must be removed immediately from the road and may not return until the condition is corrected. See id. at 38,791, JA 141 (noting that OOSC are "a list of those violations which are so unsafe that they must be corrected before operations can resume"). Consequently, application of the OOSC may result in significant financial consequences to owners and operators of vehicles, including delayed deliveries, loss of revenue and potential harm to customer relations. The OOSC, however, were developed privately and without public comment by the CVSA in 1985. See id. at 38,792-93, JA 142-43. Each year, the OOSC are amended without publication in the Federal Register or public hearing or comment. See id. at 38,792, JA 142. The OOSC are not part of the FMCSR, have not been promulgated pursuant to the APA and are available only through the CVSA's offices in Maryland. [See Pet'r Br. at 7.]
 
 
 6
 In the Motor Carrier Act of 1991, Pub.L. No. 102-240, 105 Stat. 1914 (codified as amended at 49 U.S.C. §§ 31301 et seq.) (1991 Act), the Congress required the FHWA to adopt regulations that prescribe penalties for driver violations of out-of-service orders and linked the states' adoption of penalties to their continued MCSAP funding. See 49 U.S.C. §§ 31310(g)(2), 31311(a)(17) (codifying these requirements). As part of a rulemaking proceeding to implement the 1991 Act, the FHWA promulgated 49 C.F.R. § 390.5, which defines an "[o]ut-of-service order" as
 
 
 7
 a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation, is out-of-service pursuant to §§ 386.72, 392.5, 395.13, 396.9, or compatible laws, or the North American Uniform Out-of-Service Criteria.
 
 
 8
 49 C.F.R. § 390.5; see Final Rule, Violations of Out-of-Service Orders by Commercial Motor Vehicle Operators; Disqualifications and Penalties, FHWA Docket No. MC-92-13, 59 Fed.Reg. 26,022-29 (1994), JA 46-54.
 
 
 9
 In response to the agency's notice of proposed rulemaking, see 58 Fed.Reg. 4640 (1993), the FHWA received 47 written comments, including those submitted by 26 states and a number of trade associations. See 59 Fed Reg. at 26,023, JA 47-48. As part of their comment, the Owner-Operator Independent Drivers Association (OOIDA) raised the same legal argument now raised by NTTC:
 
 
 10
 The out-of-service criteria are themselves fluid. The [OOIDA] is aware of no rulemaking proceeding or legislation that ever established out-of-service criteria, nor can the Federal Highway Administration delegate that authority to any other body without observing proper administrative procedures.
 
 
 11
 Comments of the OOIDA in Response to Notice of Proposed Rulemaking, FHWA Docket No. MC-92-13, at 4 (Mar. 16, 1993), JA 334.
 
 
 12
 In adopting section 390.5 of the FMCSR, the FHWA rejected OOIDA's assertion that the OOSC were substantive rules. Instead, the FHWA expressly viewed the OOSC as enforcement guidelines. As the agency explained:
 
 
 13
 [T]he rule does not require any changes or additions to substantive, underlying safety regulations or the manner in which they are enforced.... The rule also does not require changes in the manner in which States detect out-of-service violations.
 
 
 14
 What the rule does require is that whenever any out-of-service order is violated, sanctions must be placed on the offending party. The final rule is being changed to clarify that the underlying out-of-service order includes those issued by Federal, State, Canadian, Mexican, and local officials under Federal, State, Canadian, Mexican, and local law. The proposed rule referred only to out-of-service orders issued under Federal law. The statute, however, includes no such limitation. In practice, under the Federal/State partnership, States apply State law which should be compatible with the FMCSRs. Federal, State, Canadian, Mexican, and local jurisdictions that enforce the FMCSRs through out-of-service conditions, such as those contained in the current [OOSC], should consider violation of these criteria to be the same as violating the FMCSRs. If a driver is convicted of a violation of any out-of-service order under such compatible State law, the sanctions in this rule must be imposed.
 
 
 15
 59 Fed.Reg. at 26024-25, JA 49-50.
 
 
 16
 After the FHWA's rulemaking decision was published, OOIDA moved for a stay of the new rules in which it reiterated its view that the FHWA unlawfully delegated authority to the states "without observing proper administrative procedures." Motion to Stay of the OOIDA in Response to Final Rule, FHWA Docket No. MC-92-13, at 3 (June 13, 1994), JA 346. The FHWA did not grant a stay, however, and neither OOIDA, nor anyone else, sought judicial review of the new rules.
 
 
 17
 On April 20, 1995 NTTC petitioned the FHWA to initiate formal rulemaking and open a docket for public comment regarding the validity and effectiveness of the OOSC. See Decision, Pet. for Rulemaking, No. 96-08, at 1 (FHWA June 10, 1997) [hereinafter Pet.], JA 56. After the FHWA failed for several months to act on NTTC's request to initiate a rulemaking, NTTC petitioned this Court on September 6, 1996 for a writ of mandamus requiring the FHWA to rule on NTTC's petition or, alternatively, for certain other relief. The Court denied NTTC's petition in NTTC v. FHWA, No. 96-1339, 1997 WL 150088 (D.C.Cir. Feb. 27, 1997) (per curiam), JA 55, noting that "[a]lthough the 20-month delay [by FHWA] in acting on the petition for rulemaking is disturbing, petitioner has not yet shown 'unreasonable agency delay' warranting issuance of a writ of mandamus." Id. The denial was "without prejudice to refiling in the event of significant additional delay." Id.
 
 
 18
 On June 10, 1997 a decision and order responding to NTTC's petition was issued in FHWA Docket No. 96-08. See Pet. at 1-3, JA 56-58. The decision stated that the FHWA "will grant NTTC's petition and publish a rulemaking to discuss the entire issue and to propose a resolution." Id. at 2-3, JA 57-58. On July 20, 1998 the FHWA issued an ANPRM. Although the FHWA asserts that the issuance of the ANPRM initiates the rulemaking requested by NTTC in 1995, the ANPRM addresses only the future scope and effect of the OOSC and states that "[t]he FHWA is not ... seeking comment on the substance of the [OOSC] at this time." ANPRM, 63 Fed.Reg. at 38,794, JA 144.
 
 
 19
 The most recent revisions to the OOSC became effective April 1, 1998. See Commercial Vehicle Safety Alliance, North American Uniform Out-of-Service Criteria (Apr. 1, 1998) [hereinafter OOSC], JA 1. On that day, NTTC petitioned the FHWA for stay of application of the revised criteria. See Pet. for Stay of Application of Revised Out-of-Service Criteria and Request for Issuance of a Notice of Proposed Rulemaking of National Tank Truck Carriers, Inc. (Apr. 1, 1998), JA 60-75. Because the FHWA did not rule on its request, NTTC petitioned this Court for review of the April 1, 1998 revision to the OOSC.
 
 II.
 
 20
 NTTC relies on the Hobbs Act, 28 U.S.C. § 2341 et seq., to establish this Court's jurisdiction over its petition for review. Under the Hobbs Act,
 
 
 21
 the courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all rules, regulations, or final orders of the Surface Transportation Board made reviewable by [28 U.S.C. § 2321]." Section 2321 makes any "proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board" reviewable under § 2342(5), except as otherwise provided by an Act of Congress.
 
 
 22
 Aulenback, Inc. v. FHWA, 103 F.3d 156, 164 (D.C.Cir.1997) (quoting 28 U.S.C. §§ 2321, 2342(5)) (emphasis added).[2] From this language, it is apparent that only challenges to the "rules, regulations, or final orders" of a governmental agency are reviewable pursuant to the Hobbs Act. Therefore, the Court's jurisdiction turns on the validity of NTTC's claim that the 1998 OOSC revisions are in effect rules of the FHWA promulgated without notice and comment rulemaking in violation of the APA.[3]
 
 
 23
 The CVSA's OOSC are not themselves federal rules subject to our review under the Hobbs Act. Rather, the OOSC merely interpret the standards set forth in existing federal and state laws and regulations, such as 49 C.F.R. § 396.9,[4] which was promulgated under the FHWA's general power to set vehicle safety standards as provided in 49 U.S.C. § 31502.
 
 
 24
 As an example, we compare the FHWA regulations governing brakes on commercial vehicles with the relevant OOSC. The FHWA regulations require commercial trucks to have brakes "adequate to control the movement of, and to stop and hold, the vehicle." 49 C.F.R. § 393.40(a). In addition, the regulations spell out the "[s]pecific systems required" for regular service and emergency brakes. See id. § 393.40(b). These regulations also cross-reference other requirements in Subpart C ("Brakes") of Part 393 ("Parts and Accessories Necessary for Safe Operation") of C.F.R. Title 49 which inter alia provide the technical specifics on brake tubing, see id. § 393.46, lining, see id. § 393.47, valves, see id. § 393.49, reservoirs, see id. § 393.50, and performance requirements, see id. § 393.52. Moreover, "all brakes ... must at all times be capable of operating." Id. § 393.48.
 
 
 25
 Although a commercial motor carrier may have additional, consistent "equipment and accessories [that] do not decrease the safety of operation," id. § 393.3, the federal regulations are the binding legal norms and the operation of a commercial vehicle that falls below the regulatory criteria is unlawful. See id. § 393.1 ("No employer shall operate a commercial motor vehicle, or cause or permit it to be operated, unless it is equipped in accordance with the requirements and specifications of this part.") Thus, any commercial vehicle found to be in violation of these regulations may be taken out of service pending repairs or services needed to bring the vehicle into conformity with the regulatory requirements. See id. § 396.9(c)(2) ("No motor carrier shall require or permit any person to operate nor shall any person operate any motor vehicle declared and marked 'out of service' until all repairs required by the 'out of service notice' have been satisfactorily completed.").
 
 
 26
 The fact that the OOSC can be used to enforce these regulations is irrelevant. See Aulenback, 103 F.3d at 168 ("That [publication] gives [staff] crisper and more detailed guidance ... than that provided by [statute] does not render [publication's] provisions subject to notice and comment requirements.") (quotation omitted). "The Court has recognized that agencies do not 'develop written guidelines to aid their exercise of discretion only at the peril of having a court transmogrify those guidelines into binding norms' subject to notice and comment strictures." Id. at 169 (quoting Community Nutrition Inst. v. Young, 818 F.2d 943, 949 (D.C.Cir.1987) (per curiam)). For example, a relevant section of the OOSC simply indicates that for "electric brakes" a truck may temporarily continue in operation so long as the "[a]bsence of braking action" does not exceed "20 percent or more of the braked wheels.... (393.48(a))." OOSC Brake System Criterion 1(l ), JA 18. OOSC guidelines like these do not alter the underlying substantive legal requirements found in the regulations. See Aulenback, 103 F.3d at 166.
 
 
 27
 In addition, no federal statute or regulation either requires or authorizes federal or state agents to use the OOSC in deciding to place a vehicle out of service.[5] Although NTTC argues that the OOSC provide an independent basis for placing a commercial vehicle out of service, the particular regulation cited and relied on by NTTC, 49 C.F.R. § 390.5, simply specifies that certain federal penalties set forth in 49 C.F.R. §§ 383.51(d) (disqualification), 383.53(b) (civil fines) and 391.15(d) (disqualification) will be imposed upon those convicted of violating an out of service order only if that order is issued pursuant to a limited set of criteria, which include 49 C.F.R. §§ 386.72, 392.5, 395.13, 396.9, other "compatible laws" and the OOSC. 49 C.F.R. § 390.5 (definition of "out-of-service order"). Section 390.5 is not itself an authorization to place vehicles out of service nor does any regulation containing such an authorization use the defined term "out-of-service order."
 
 
 28
 Furthermore, the Hobbs Act gives this Court no authority to review the guidelines of a non-governmental organization such as the CVSA. See 28 U.S.C. §§ 2321, 2342(5). NTTC, however, tries to overcome this jurisdictional defect by arguing that the FHWA adopted the April 1, 1998 revision to the OOSC through its incorporation into the definition of "out-of-service order" in 49 C.F.R. § 390.5. But as we have already noted, the definition provision is neither an authorization nor incorporated in an authorization to take vehicles out of service; therefore, the inclusion of the OOSC in § 390.5 does not transform the OOSC into substantive rules.
 
 
 29
 Nor can NTTC now challenge the incorporating regulation directly. Any challenge to 49 C.F.R. § 390.5 would have long ago fallen victim to the time limitation in the Hobbs Act, 28 U.S.C. § 2344 (emphasis added), which provides, "Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." See also Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (noting necessity to strictly construe Hobbs Act language is "is all the more true of statutory provisions specifying the timing of review"); Natural Resources Defense Council v. Nuclear Regulatory Comm'n, 666 F.2d 595, 602 (D.C.Cir.1981) ("The 60 day period for seeking judicial review set forth in the Hobbs Act is jurisdictional in nature, and may not be enlarged or altered by the courts."). Since the reference to the OOSC at issue was added to 49 C.F.R. § 390.5, after notice and comment procedures, over four years ago, see 59 Fed.Reg. at 26022, 26028, JA 47, 53, any attempt to challenge the regulation now is plainly untimely.
 
 
 30
 Because we are without jurisdiction under the Hobbs Act to review NTTC's petition, we need not consider its remaining arguments. Accordingly, the petition is
 
 
 31
 Dismissed.
 
 
 
 [1]
 The CVSA began in the early 1980s when several western states and Canadian provinces sought to provide trucking operations in their region with greater uniformity on safety defect enforcement tolerances. The FHWA encouraged the cooperative effort through the Motor Carrier Safety Assistance Program (MCSAP) and all of the states soon joined. Both the FHWA and NTTC are non-voting members of the CVSA. See id. at 38,792-93, JA 142-43
 
 
 [2]
 Aulenback construed this provision to encompass requests for review of rules, regulations or orders issued by the FHWA pursuant to authority transferred to the DOT under the Department of Transportation Act, Pub.L. 89-670, § 6, 80 Stat. 937 (1966). See Aulenback, 103 F.3d at 164
 
 
 [3]
 The APA defines a "rule," in relevant part, as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). Although the APA generally prohibits an agency from issuing a rule without public notice and comment, it does not subject every rule to its requirements. Instead, an agency may develop "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" without providing public notice and comment. Id. § 553(b)(3)(A); see also Aulenback, 103 F.3d at 168-69 ("The primary purpose of the procedural rules exemption in § 553 is to ensure that agencies retain latitude in organizing their internal operations.") (quotations omitted); Stuart-James Co. v. SEC, 857 F.2d 796, 801 (D.C.Cir.1988) (holding that "a clarification or explanation of existing laws or regulations" is exempt from APA notice and comment), cert. denied, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1002 (1989)
 
 
 [4]
 In relevant part, 49 C.F.R. § 396.9(c)(1) states, "Authorized personnel shall declare and mark 'out of service' any motor vehicle which by reason of its mechanical condition or loading would likely cause an accident or breakdown."
 
 
 [5]
 NTTC improperly relies on the OOSC's "policy statement" dealing with drivers to suggest that state and federal agents necessarily use the OOSC to place vehicles out of service. See Pet'r Br. at 9 (quoting OOSC at 2 (Part I "Policy Statement") ("The necessity for all enforcement personnel to implement and adhere to these standards is: (1) a matter of law...."), JA 5). The "policy statement" dealing with vehicle safety criteria, however, does not contain similar language. See OOSC at 7 (Part II "Policy Statement"), JA 10. Of greater significance, the OOSC by its own statement denies any intent to supplant or expand federal commercial motor vehicle safety regulations. See id. at 2 (Part I "Policy Statement") ("Except where state provincial, or federal laws preclude enforcement of a named item, motor carrier safety enforcement personnel and their jurisdictions shall comply with these driver out-of-service violation standards.") (emphasis added), JA 5