# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 28, 2007          Decided May 11, 2007

No. 06-1122

NATIONAL ASSOCIATION OF MANUFACTURERS, ET AL.,
PETITIONERS

v.

OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION AND
ELAINE L. CHAO, SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR,
RESPONDENTS

UNITED STATES CHAMBER OF COMMERCE,
INTERVENOR FOR PETITIONER

———

On Petition for Review of an Order of the
Occupational Safety and Health Administration

———

*Douglas J. Behr* argued the cause for petitioners and intervenor in support of petitioners. With him on the brief was *Lawrence P. Halprin.*

*Edward D. Sieger*, Senior Appellate Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief were *Joseph M. Woodward*, Associate Solicitor, and *Ann S. Rosenthal*, Deputy Associate Solicitor.

Before: SENTELLE, HENDERSON, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Under the Occupational Safety and Health Act ("the Act"), parties adversely affected by an occupational safety or health standard may file a petition for review "at any time prior to the sixtieth day after such standard is promulgated." 29 U.S.C. § 655(f). In the 1980s, the Department of Labor issued a standard prescribing hazard disclosure requirements for the chemical industry. Among other things, the standard imposes obligations based on the "latest edition" of a list of dangerous chemicals published by a private group of industrial hygienists. When the hygienists added several chemicals to the list in 2006, industry groups filed this petition for review, arguing that publication of the privately created list effectively amended the standard without notice and comment. Because the references to the "latest edition" of the hygienists' list have been part of the regulations for some twenty years, we dismiss the petition as untimely.

**I.**

In order to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651(b), Congress enacted the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-78, giving "[p]rimary responsibility for the implementation of the Act . . . [to] the Secretary of Labor." *Gen. Carbon Co. v. OSHRC*, 860 F.2d 479, 480 (D.C. Cir. 1988) (citing 29 U.S.C. § 655). In 1983, acting pursuant to this authority, the Department, through the Occupational Safety and Health Administration (OSHA), promulgated the Hazard Communication Standard (HCS), which "imposed various

requirements on manufacturers aimed at ensuring that their employees were informed of the potential hazards posed by chemicals found at their workplace." *Dole v. United Steelworkers*, 494 U.S. 26, 29 (1990). Critically for present purposes, the HCS requires chemical manufacturers and importers to provide employees and customers with safety information—via labels and material safety data sheets (MSDSs)—about the hazardous chemicals they make or import. 29 C.F.R. § 1910.1200 (d)–(g).

This case primarily concerns how particular chemicals are classified as hazardous. Rather than attempting to identify every hazardous chemical, the HCS "places primary responsibility for determining which products are hazardous on the chemical manufacturer or importer." *United Steelworkers v. Auchter*, 763 F.2d 728, 739 (3d Cir. 1985). Thus, the HCS defines a chemical as hazardous if "there is statistically significant evidence based on at least one study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed employees," 29 C.F.R. § 1910.1200(c), and requires that companies "evaluate chemicals produced in their workplaces or imported by them to determine if they are hazardous," *id.* § 1910.1200(d)(1). Under this "one-study" rule, a company that manufactures a particular chemical is free to decide that a scientific study about that chemical is either unreliable or inapplicable, in which case it need not treat the chemical as hazardous. Companies choosing this option risk enforcement proceedings if OSHA disagrees with their assessment. *See* 29 U.S.C. § 658 (authorizing the Secretary of Labor or her designee to issue citations for violations of occupational safety or health standards).

The HCS, however, takes two categories of hazard determinations out of company hands. First, it deems hazardous any substance on OSHA's list of Toxic and Hazardous

Substances printed in subpart Z of 29 C.F.R. part 1910. 29 C.F.R. § 1910.1200(d)(3)(i). Second, and central to this case, the HCS provides that chemicals must be treated as hazardous if included in the "latest edition" of the "Threshold Limit Values for Chemical Substances and Physical Agents in the Work Environment" ("TLV list"), published by the American Conference of Governmental Industrial Hygienists (ACGIH). *Id.* § 1910.1200(d)(3)(ii). ACGIH describes itself as "an organization devoted to the administrative and technical aspects of occupational and environmental health. . . . [It] is a professional society, not a government agency." 2006 TLV List at ii. According to a "Statement of Position" printed with the 2006 TLV list, ACGIH's work reflects "scientific opinion based on a review of existing peer-reviewed scientific literature by committees of experts in public health and related sciences . . . . [of] the level of exposure that the typical worker can experience without adverse health effects." *Id.* at v.

ACGIH published an updated version of the TLV list on January 31, 2006. According to petitioners, the National Association of Manufacturers and other industry groups, as well as intervenor, the United States Chamber of Commerce (throughout this opinion, we shall refer to all as "NAM"), the 2006 TLV list "added five new substances [three kinds of calcium sulfate, coumaphos, and monochloroacetic acid] and their corresponding [threshold limit values] to the ACGIH TLV list." Pet'rs' Br. 12. The 2006 list also "established a [threshold limit value] for a substance (propylene . . .) previously only identified as an 'asphyxiant,'" "lowered the [threshold limit values] for nine substances already on the TLV list," and "changed the substantive notations associated with three substances already on the TLV list." *Id.* at 12-13. NAM's members manufacture or use chemicals affected by these changes.

Believing that publication of the 2006 TLV list amended the HCS without opportunity for notice and comment, NAM filed this petition for review under 29 U.S.C. § 655(f), which authorizes challenges to occupational safety or health standards "at any time prior to the sixtieth day after such standard is promulgated." Although NAM focuses on the HCS provision that deems hazardous those chemicals included in the latest TLV list, it identifies three other references to ACGIH's publication. First, the HCS provides that a chemical mixture must be treated as hazardous if a minor component (less than one percent) of the mixture could be released in a concentration that would exceed an ACGIH threshold limit value. 29 C.F.R. § 1910.1200(d)(5)(iv). Second, the HCS requires that for any such chemical mixture, the hazardous component must be included in the mixture's MSDS. *Id*. § 1910.1200(g)(2)(i)(C)(2). Finally, the HCS mandates that an MSDS include: "The OSHA permissible exposure limit, ACGIH Threshold Limit Value, and any other exposure limit used or recommended by the chemical manufacturer, importer, or employer preparing the material safety data sheet, where available." *Id.* § 1910.1200(g)(2)(vi).

## II.

NAM's argument on the merits is straightforward. The same statute that authorizes OSHA to promulgate occupational safety and health standards, 29 U.S.C. § 655, also authorizes it to modify existing standards, but requires that it first publish proposed rules in the Federal Register and allow thirty days for comment. *Id.* § 655(b)(2). Contending that the HCS "automatic[ally] incorporat[es]" each new TLV list upon publication, NAM argues that when the 2006 list was published, "OSHA . . . effectuated a new standard that imposes both new and modified compliance obligations on employers . . . and subjects them to the threat of enforcement actions and sanctions

for failure to comply with those obligations." Pet'rs' Br. 19. Because OSHA imposed these new obligations without notice and comment, NAM claims that the agency has violated section 655.

The government's response is equally straightforward. Citing section 655(f)'s requirement that petitions for review of occupational safety or health standards be brought within sixty days of promulgation and noting that the HCS provisions referencing the TLV list were promulgated in 1983 (in the cases of 29 C.F.R. § 1910.1200(d)(3)(ii), (d)(5)(iv), and (g)(2)(vi)) and 1987 (in the case of 29 C.F.R. § 1910.1200(g)(2)(i)(C)(2)), OSHA claims that NAM "misse[d] the statutory deadline by about two decades." Resp'ts' Br. 22. Rejecting NAM's view that the 2006 TLV list amended the HCS, OSHA contends that "[t]he [HCS] has always required employers, manufacturers and importers to treat a substance as hazardous if it is listed in the latest edition of the ACGIH TLV compilation." *Id.* at 24.

The question, then, is whether the 2006 TLV list modified the HCS. If so, the sixty-day judicial review clock started running on January 31, 2006—the day the list was published—and the petition for review would be timely. If not, then the clock began running in 1987 (at the latest), which would make the petition twenty years late.

We find the government's arguments persuasive. The Act defines an "occupational safety and health standard" as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). As OSHA points out, the conditions required of regulated parties changed not at all in 2006. Both before and after publication of the new TLV list, regulated parties were required to treat as

hazardous any chemical listed in the then-current version of the list. Imposed by 29 C.F.R. § 1910.1200(d)(3)(ii), that requirement has remained unchanged for more than sixty days. The same is true of the conditions required by the other HCS provisions referencing the TLV list, the youngest of which dates from 1987.

NAM asks us to understand the HCS as defining the conditions required of its members not in terms of a general obligation to comply with the current TLV list, but more specifically in terms of the particular chemicals that industry must treat as hazardous. Yet treating the HCS as prescribing the particular chemicals for which hazard communications are required, as opposed to the system for recognizing such chemicals, would directly contradict the regulatory scheme OSHA established in 1983. With minor exceptions not relevant here, the HCS identifies no specific chemicals as hazardous, instead leaving their evaluation to ACGIH and, in the case of the one-study rule, to regulated entities themselves. NAM's argument for a more specific level of generality would make sense only if the statutory definition of a "standard" required the regulation of particular chemicals. But as we noted in *Animal Legal Defense Fund, Inc. v. Glickman*, we afford agencies "broad deference" when "choosing the level of generality at which to articulate rules." 204 F.3d 229, 235 (D.C. Cir. 2000).

In sum, because the 2006 amendments to ACGIH's TLV list did not modify the HCS and because the HCS has remained unchanged in relevant respects for approximately twenty years, NAM's petition for review is untimely. *Cf. Nat'l Tank Truck Carriers, Inc. v. Fed. Highway Admin.*, 170 F.3d 203 (D.C. Cir. 1999) (rejecting as untimely petition for review challenging agency regulation referencing privately created list of roadworthiness criteria for commercial vehicles). In reaching this conclusion, we recognize that time limits like the one

contained in section 655(f) may have no applicability where "the petitioner lacked a meaningful opportunity to challenge the agency action during the review period." *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911 (D.C. Cir. 1985). But given that NAM failed to argue in its opening brief that it lacked a meaningful opportunity to challenge the HCS in either 1983 or 1987, we have no need to pass on the applicability of the exception to this case. At oral argument, NAM did make a stab at such a claim, but that came too late for us to consider it. *See Power v. Barnhart*, 292 F.3d 781, 787 n.5 (D.C. Cir. 2002) ("[I]t is simply too late to raise [a new argument] for the first time in oral argument."). We therefore dismiss the petition for review.

*So ordered.*